IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1918.

CLARA JUSTESEN, PLAINTIFF, v. PENNSYLVANIA RAIL-
ROAD COMPANY, DEFENDANT.

Submitted July 8, 1918—Decided February 25, 1919.

1. Damages chargeable to a wrongdoer must be shown to be the
natural and proximate effects of his delinquency. The term
"natural" imports that they are such as might reasonably have
been foreseen, such as occur in an ordinary state of things; the
term "proximate" indicates that there must be no other culpable
and efficient agency intervening between the defendant's derelic-
tion and the loss.

2. Although physical sickness may result from mental worry pro-
duced by the wrongful act of another, it is not the necessary or
natural consequence of the mental condition, and so cannot be
said to be the proximate consequence of the wrong done.

3. Plaintiff, wishing to take her baby to visit her parents in Peters-
burg, Va., inquired at the information bureau of the defendant
company in New York whether a quarantine existed in Virginia
against infantile paralysis, and was told that it had been lifted,
and that it would be safe for her to go. Plaintiff boarded a train
at New York, was transported to Washington, where the Pullman
car in which she rode was turned over to and attached to the
train of another carrier, to be transported for the remainder of the
journey. After the train was transferred at Washington, the

conductor of the second carrier informed plaintiff that she and her infant child would have to leave the train on account of the Virginia quarantine. which she did. For the distress and mortification caused by her expulsion and ensuing sickness, alleged to have resulted therefrom, plaintiff brought suit and recovered a verdict against the initial carrier. *Held*, that the humiliation and mortification suffered by the plaintiff were neither the natural nor the proximate result of the misinformation she received from the defendant company ; and *Held further*, that the illness of the plaintiff was not the necessary or natural consequence of her mental anguish, and therefore not the proximate consequence of the wrong done.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

For the rule, *Vredenburgh, Wall & Carey.*

*Contra, Richard Doherty.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This was an action for damages. The trial resulted in a verdict in favor of the plaintiff for $1,000.

The case against the defendant was this: The plaintiff, a married woman, on October 12th, 1916, started with her baby over the road of the defendant company on a trip to her parents at Petersburg, Va. The southern terminus of the defendant's road was Washington, D. C. Two days before the trip was begun the plaintiff's husband, by telephone, sought from the information bureau at the defendant's main station in New York advice as to whether the quarantine in the State of Virginia, which had been declared against infantile paralysis, had been lifted, stating that his wife and baby wanted to make a trip to Petersburg to see their people there. In reply to his question he was told that the quarantine had been lifted, and that it would be safe for his wife to go. This information was incorrect, for the quarantine still pre-

vailed. Acting on it, however, the plaintiff boarded a Pullman car attached to the defendant company's train at the station in Newark. This car went through to Petersburg, being hauled over the Pennsylvania road to Washington, at which point it was transferred to the Richmond, Fredericksburg and Potomac Railroad Company, hauled by that company to Richmond, and then turned over to the Atlantic Coast Line Company, and by it taken forward to Petersburg. After the transfer to the Richmond, Fredericksburg and Potomac Company at Washington, and after the car was attached to the train of the latter company, the conductor of this train entered the Pullman and informed the plaintiff that she and her infant child would have to leave the train, as it was against the law to take children into Virginia, and this she did. On leaving the train she went into the Union station at Washington with her child, and remained there until eleven o'clock the next morning, when she returned home. She says that the distress and mortification of her expulsion so affected her that she became sick to such an extent, that she was confined to her bed upon her return home for two weeks, and was unable to leave the house for two months.

Assuming that the so-called information bureau at the Pennsylvania Railroad Company's station in New York was acting within the scope of its agency in informing plaintiff's husband as to the condition of the quarantine laws of the State of Virginia, the question for determination is the extent to which the defendant company is legally responsible for the injuries suffered by the plaintiff.

The rule is entirely settled that the damages chargeable to a wrongdoer must be shown to be the natural and proximate effects of his delinquency. The term "natural" imports that they are such as might reasonably have been foreseen, such as occur in an ordinary state of things; the term "proximate" indicates that there must be no other culpable and efficient agency intervening between the defendant's dereliction and the loss. *Cuff, Adm'x., v. Newark & New York R. R. Co.,* 35 *N. J. L.* 17; *Wiley v. West Jersey R. R. Co.,* 44 *Id.* 247.

Tested by this rule we think it clear that the defendant company is not legally responsible for the humiliation and mortification which the plaintiff suffered by reason of her removal from the train of the Richmond, Fredericksburg and Potomac Company; for such humiliation and mortification were neither the natural nor the proximate result of the misinformation with relation to the Virginia quarantine. It is true that the company might have anticipated that the plaintiff would not have been carried beyond Washington, but certainly it had no reason to anticipate that she would have been removed from the car in which she was traveling in such a manner as either to humiliate or mortify her. Nor was her removal from the train in such a way as to produce these effects the proximate result of the defendant company's dereliction. If the removal occurred under such conditions as she indicates, conditions which humiliated and mortified her, the person responsible therefore—that is, for the use of improper methods in her removal—was the conductor of the Richmond, Fredericksburg and Potomac train, and as he was a culpable and efficient agency intervening between the defendant's dereliction and the plaintiff's injury, his conduct broke the causal connection between them and so relieved the defendant.

Nor can the defendant company be held responsible for the illness of the plaintiff, and for two reasons. In the first place, if it was produced by her improper removal from the car, that is a matter between her and the Richmond, Fredericksburg and Potomac Company, as has already been stated. In the second place, although physical sickness may result from mental worry produced by the wrongful act of another, it is not a necessary or natural consequence of the mental condition, and so cannot be said to be the proximate consequence of the wrong done. *Ward* v. *West Jersey & Seashore R. R. Co.,* 65 *N. J. L.* 383; *Butler* v. *Hoboken Printing and Publishing Co.,* 73 *Id.* 45, 50.

The only liability resting upon the defendant, assuming that such liability exists at all, is to restore to the plaintiff the money which its inaccurate information caused her to

expend. There is no suggestion that the time wasted by her on her abortive trip produced any other financial loss.

The damages awarded by the jury being entirely without legal justification, the rule to show cause must be made absolute.