## MARGIE WILLIAMSON v. DOROTHY BENNETT.

### (Filed 14 January, 1960.)

**1. Trial § 22a—**

On motion to nonsuit the evidence should be taken in the light most favorable to plaintiff and she is entitled to the benefit of every intendment upon the evidence and every reasonable inference of fact to be drawn therefrom.

**2. Damages § 3—**

Where ordinary negligence produces some actual physical impact or genuine physical injury, damages may be recovered for mental or emotional disturbance naturally and proximately resulting therefrom.

**3. Same: Negligence § 1—**

Mere fright caused by ordinary negligence is not ground for an action or the recovery of damages.

**4. Same—**

Fright resulting from ordinary negligence may be ground for an action and the recovery of damages if actual physical injury immediately, naturally and proximately results from the fright, as when fright causes plaintiff to faint and fall to his injury.

**5. Same—**

Neurasthenia resulting from fear or anxiety for the life, safety or well being of a person other than plaintiff himself is not ordinarily ground for the recovery of damages.

**6. Damages § 3— Damages for neurasthenia which is not the natural and direct result of the negligent act may not be recovered.**

Plaintiff's evidence disclosed that there was an actual impact between her car and the car of defendant, accompanied by a grinding noise, that plaintiff received no direct bodily impact and no immediate physical injury from the collision, that plaintiff was more than ordinarily predisposed to neurosis, that previously a child on a bicycle had run into a car driven by her brother-in-law, which accident resulted in the child's death, that plaintiff had theretofore been involved in another accident from which she had completely recovered, that at the time of the accident in suit plaintiff did not see what had struck her car but was seized with fear and anxiety that she had hit a child on a bicycle, and that thereafter plaintiff developed a neurasthenia and experienced a conversion reaction resulting in pseudo-paralysis. *Held*: Plaintiff's emotional disturbance was not the natural and proximate result of the accident, and further, was not based on anxiety for her own safety but upon a supposed injury to a non-existent child on an imaginary bicycle, and therefore plaintiff is not entitled to recover of defendant damages for the mental distress and nervous disorder.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Frizzelle, J.,* May 1959 Civil Term, of NASH.

This action was instituted by plaintiff to recover damages for injuries to her person and property because of the alleged actionable negligence of defendant.

The complaint alleges that there was a collision between automobiles driven by plaintiff and defendant; that defendant was negligent in that she failed to maintain a reasonable lookout, failed to keep her vehicle under proper control and failed to yield the right of way; that defendant's negligence was the proximate cause of the collision; that as a result of the collision plaintiff's automobile was damaged and "the plaintiff has suffered from an extreme nervous condition, resulting in a conversion reaction causing facial paralysis, weakening of the left side of her body, extreme anxiety, inability to sleep and a nervous breakdown."

Defendant answered and denied that she was negligent, averred that the collision was caused by plaintiff's negligence in failing to keep a reasonable lookout and in violating other alleged duties, and alleged that plaintiff's negligence contributed to her injuries.

The evidence adduced at the trial tends to show:

Hill Street in the city of Rocky Mount is a two-lane one-way street accommodating west-bound traffic. At its intersection with Raleigh Street traffic is controlled by lights. A school is located near the northwest corner of this intersection. On Hill Street in the block east of the intersection the speed limit is 20 miles per hour. On 9 May 1958, about 8:30 A. M., plaintiff was driving her Buick automobile westwardly on Hill Street approaching the traffic light at the Raleigh Street intersection. Her speed was about 20 miles per hour. Her two daughters were in the car with her; she was taking the older daughter to school, but not to the school referred to above. She was travelling in the north or right-hand lane. She overtook and passed another vehicle, turned back into the north lane, and observed that the traffic light was red and that there was a line of cars in the south lane waiting for the light to change, but none in the north lane. She proceeded toward the intersection, passing the line of cars on her left.

The defendant resides on the south side of Hill Street near the intersection; she was attempting to leave her private driveway in a Triumph sportscar — a small car. The line of traffic in the south lane barred her way. A motorist stopped immediately east of her driveway and waved her through the line. She passed through the gap in the line and attempted to enter the north lane and collided with the Buick driven by plaintiff. The impact turned defendant's car back into the south lane.

WILLIAMSON *v.* BENNETT.

The only injury to defendant's car was a "slight dent" on the right front fender. Plaintiff's car was "lightly dented" on the left door and door post. Part of the damage on plaintiff's car had been caused by another accident. The new "scrape" started "about the center of the left front door . . . went across the center post and stopped approximately the middle of the left rear door." The "scrape" was "approximately ¼th inch deep and 2 or 3 inches wide. The middle was dented in and the paint scraped off."

Plaintiff did not see what had made contact with her car. There was a "grinding sound on the left side" of her car. "It did not sound like a car." About a month before this, a little girl riding a bicycle had run into the side of plaintiff's brother-in-law's car and was killed. When plaintiff heard the "grinding" sound all she could think of was that she had killed a child. She thought, "Oh, God, not a child on a bike." She drove on through the intersection and parked the Buick and then saw for the first time that she had struck a car and was glad it was a car and not a child on a bicycle. She testified at the trial: "I was so relieved it was the car, I was perfectly all right." Both drivers said they were not hurt and were sorry the accident had occurred. Plaintiff did not seem upset. There were no skid marks on the street; there was no debris or broken glass.

Later in the day plaintiff became nervous and upset. She had no physical injuries. Her nervous condition grew worse. She was 29 years old, had been married ten years and had two children. Before the accident she was a good and dutiful mother and wife, was neat in appearance, kept a neat and attractive home, helped her husband in his business, liked to be with people, was a lively conversationalist and a good neighbor. She had been injured in an automobile accident in 1955 and her injuries required surgery, but she had fully recovered and was in good health in 1958. After the accident on 9 May 1958, she was nervous and anxious, had frequent crying spells, was irritable, constantly scolded the children, was abusive to her husband, claimed that nobody loved her and that her husband's people hated her, insisted that she didn't have a friend in the world, avoided people and wanted to be alone, and neglected the children, her house work and her husband's business. In the course of time she began to complain that the corner of her mouth was drawn, her tongue swollen, and her left side numb. She complained of shortness of breath, difficulty in swallowing, and that she could not sleep.

She went to Dr. Bell, her family physician, on 22 May 1958 and he saw her often thereafter until September. He considered that she had a nervous disorder, "something on the order of a nervous breakdown." He prescribed a tranquilizer, and tried several kinds.

WILLIAMSON *v.* BENNETT.

In September 1958 she was seen by Dr. Somers, a psychiatrist of Memorial Hospital, Chapel Hill, N. C. He made a diagnosis and treated her. He saw her eleven times from September to December. He performed a "psychological talking treatment" — psychotherapy. In his opinion plaintiff prior to the accident had a more than ordinary proneness to neurosis, and this proneness is explainable by certain of her childhood experiences. In psychiatry, neurosis is "a functional nervous disorder, without demonstrable physical lesion." (Webster's New International Dictionary, 2nd Edition). Dr. Somers diagnosed her condition as a conversion reaction. He explained that "a conversion reaction is a reaction where emotional and psychological upset, nervousness, (or) anxiety . . . is so intent and reaches the point that the mind and body then convert this into a physical symptom and then this relieves partially this anxiety." Dr. Somers testified further as follows: A conversion reaction may be described as a post-traumatic neurosis. Trauma in this sense need not be a physical injury, it may be a forceful psychological effect — it was in this instance. The physical symptoms plaintiff felt had a psychological basis and involved no anatomical change. Plaintiff's numbness and paralysis were not physical but ony pseudo-paralysis. However, her symptoms were classical symptoms of conversion reaction. She was not malingering. In the doctor's opinion, plaintiff's "fright at having collided with the defendant's little sports car produced the physical symptoms, the physical and emotional impairment." The precipitating cause of a conversion reaction "does not need to be a physical injury . . . the accident triggered off her reaction." The bicycle incident in her family "made her more susceptible." Without the accident she would not have had the illness.

Dr. Ewing, psychiatrist, who collaborated with Dr. Somers, testified: "Noise like metal, like the noise of a bicycle, against the side of the car . . . this was really a very important factor in the accident and her reaction to it."

Dr. Somers testified further that plaintiff "got over the conversion reaction." It was arrested. She may need further treatment for the upset caused by the trial, 3 or 4 visits.

Defendant did not offer evidence and at the close of plaintiff's evidence moved for judgment of nonsuit "only with respect to . . . claim for personal injuries." The motion was overruled and defendant tendered two issues (excluding consideration by jury of any personal injury.) These issues were refused, and issues were submitted to the jury and answered as follows:

"1. Was the plaintiff injured and her automobile damaged by the negligence of the defendant? Answer: Yes.

"2. What amount is plaintiff entitled to recover of the defendant by reason of injuries to her person? Answer: $4,000.00.

"3. What amount is the plaintiff entitled to recover of the defendant by reason of the damage to her automobile? Answer: $200.00."

Upon the coming in of the verdict defendant tendered a judgment allowing recovery for property damage but denying recovery for personal injuries as a matter of law and notwithstanding the verdict. The court declined to sign this judgment. Defendant excepted in apt time to each adverse ruling of the court.

From judgment in conformity with the verdict defendant appealed and assigned error.

*Thorp, Spruill, Thorp & Trotter for plaintiff, appellee.*
*Battle, Winslow, Merrell, Scott & Wiley for defendant, appellant.*

MOORE, J. The question for decision on this appeal is whether or not the court erred in overruling defendant's motion for nonsuit of plaintiff's personal injury action.

For the purposes of this appeal defendant concedes that she was negligent, that her negligence was the proximate cause of the collision and that she is liable for the "slight" damage to plaintiff's automobile. But she denies that she is responsible for plaintiff's neurosis and "converion reaction."

On a motion for nonsuit the evidence is to be taken in the light most favorable to the plaintiff and she is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference of fact to be drawn therefrom. *Manufacturing Co. v. Gable*, 246 N.C. 1, 14, 97 S.E. 2d 672.

When the evidence in the instant case is considered in accordance with this rule, the following salient facts emerge: Plaintiff experienced no direct bodily impact and received no immediate physical injury from the collision. Plaintiff did not see what had struck her car until she had driven about half a block beyond the point of collision and parked her vehicle; she heard "a grinding sound on the left side" of her automobile. She was more than ordinarily predisposed to neurosis. The collision occurred near a school building while children were going to school. About a month earlier her brother-in-law, while driving an automobile, had collided with a child on a bicycle and the child had been killed. When plaintiff heard the "grinding noise" she was seized with fear and anxiety that she had hit a child on a bicycle and was somewhat relieved to discover later that she had not. From this experience she developed a neurosis which resulted in a conversion reaction or pseudo-paralysis. In the opinion of the psychia-

trists who attended her, the collision and grinding noise "triggered" her neurosis.

Upon this evidence plaintiff insists that she has made out a *prima facie* case for recovery of damages for personal injury resulting from defendant's negligence.

This case falls within a relatively "open space" of the law. Our Court has decided cases somewhat analagous but none directly in point. With respect to some of the material aspects of the case there is considerable conflict and lack of significant direction in the decisions of other jurisdictions. This cause involves mental distress and invasion of emotional tranquility. It concerns itself with fear and resultant neurasthenia allegedly caused by *ordinary negligence*. In so far as possible we shall avoid consideration of those situations wherein fright, mental suffering and nervous disorder result from intentional, wilful, wanton or malicious conduct.

The phase of the law with which we are here concerned is fully discussed, with ample citations and annotations, in the following authorities: 52 Am. Jur., Torts, sections 45-72, pp. 388-419; 25 C.J.S., Damages, sections 62-70, pp. 548-560; 64 A.L.R. 2d 95-151; 98 A.L.R. 394-406; 76 A.L.R. 676-686; 56 A.L.R. 655-660; 44 A.L.R. 425-430; 40 A.L.R. 970-987; 23 A.L.R. 358-392; 11 A.L.R. 1115-1144. We have carefully considered these and other authorities. We have, of course, examined North Carolina decisions with great care. From the foregoing we glean the following general principles and conclusions.

It is almost the universal opinion that recovery may be had for mental or emotional disturbance in ordinary negligence cases where, coincident in time and place with the occurrence producing the mental stress, some actual physical impact or genuine physical injury also resulted directly from defendant's negligence. Thus, where plaintiff was electrically burned by defendant's negligence, it was held that she was entitled to recover for resulting shock and traumatic neurosis. *Traction & Terminal Co. v. Roman* (Ky. 1929), 23 S.W. 2d 272. See also *Israel v. Ulrich* (Conn. 1932), 159 A. 634, where injury was slight. North Carolina decisions are in accord. *Ford v. Blythe Brothers Co.*, 242 N.C. 347, 87 S.E. 2d 879; *Lane v. R. R.*, 192 N.C. 287, 134 S.E. 855; *Kistler v. R. R.*, 171 N.C. 577, 88 S.E. 864. But the emotional disturbance and nervous disorder must be the natural and proximate result of the injury as it affects plaintiff himself. *Ferebee v. R. R.*, 163 N.C. 351, 79 S.E. 685. In this case plaintiff was not allowed to recover for mental suffering occasioned by worry that his physical injuries would prevent him from supporting his family and educating his child.

All courts agree that mere fright caused by ordinary negligence

does not give a cause of action and may not be considered an element of damages. *R. R. v. Hayter*, (Tex. 1900), 54 S.W. 944, 945; *Chiuchiolo v. Wholesale Tailors* (N.H. 1930), 150 A. 540, 545. Our Court has so declared in negligence cases and in cases involving wilful conduct. *Kirby v. Stores Corp.*, 210 N.C. 808, 812, 188 S.E. 625; *Arthur v. Henry*, 157 N.C. 438, 440, 73 S.E. 211; *Kimberly v. Howland*, 143 N.C. 398, 403, 55 S.E. 778.

Where actual physical injury immediately, naturally and proximately results from fright caused by defendant's negligence, recovery is allowed. It was decided that "one negligently colliding with another's automobile may properly be held liable for injury sustained by an occupant who, though uninjured by the collision, fainted from fright on leaving the car and, falling, fractured her skull." *Comstock v. Wilson* (N.Y. 1931), 177 N.E. 431, 76 A.L.R. 676. See also *Colla v. Mandella* (Wis. 1957), 85 N.W. 2d 345, 64 A.L.R. 2d 95.

In some jurisdictions neurotic reactions, accompanied by severe headaches, dizziness, crying spells, irritability, back pains and similar manifestations, resulting from fright caused by defendant's negligence, are held to justify recovery on the ground that they amount to and should be regarded as "physical" injuries. *Bowman v. Williams* (Md. 1933), 165 A. 182; *Motor Co. v. Crysel* (Tex. 1956), 289 S.W. 2d 631. In a decision of this Court, *Kimberly v. Howland, supra*, it is said: "The nerves are as much a part of the physical system as the limbs, . . . We think the general principles of the law of torts support a right of action for physical injuries resulting from negligence, whether wilful or otherwise, none the less strongly because the physical injury consists of a wrecked nervous system instead of lacerated limbs."

Most of the courts have displayed considerable reluctance to extend recovery for mental distress and nervous disorders resulting from shock and fright to situations involving ordinary negligence. Various reasons are assigned for denial of recovery in such cases. It has been said that there can be no recovery for the consequences of fright where there can be no recovery for fright itself. *R. R. v. Bragg* (Ark. 1901), 64 S.W. 226; *Mitchell v. R. R.* (N.Y. 1896), 45 N.E. 354. There are decisions to the effect that nervous disorder resulting from fright is too remote in the chain of causation and is not the natural and probable consequence of the wrong done. *Justesen v. R. R.* (N.J. 1919), 106 A. 137. It was held that a miscarriage as a result of fright is not actionable since it was the result of an accidental and unusual combination of circumstances which could not have been reasonably anticipated and over which the defendant had no control. *Mitchell v. R. R., supra*. Some courts have denied recovery on the ground that

emotional disturbances are subjective states of mind, difficult of proper evaluation and of such nature that plaintiff's proof is too easy and defendant's burden too difficult. It is suggested that recovery on such grounds will open the door to fraud. *Huston v. Freemansburg* (Pa. 1905), 61 A. 1022. It is contended that it would result in a flood of litigation. *Mitchell v. R. R., supra. Spade v. R. R.* (Mass. 1897), 47 N.E. 88, rested its decision in part on the ground that in practice it is impossible for the courts to properly administer a rule allowing such recovery. These and many other reasons have been assigned for denying recovery for neurosis resulting from fright.

The courts of many jurisdictions allow recovery for emotional disturbances, mental suffering and neurosis resulting from shock and fright in cases of ordinary negligence if they proximately flow from defendant's wrongful act and may be reasonably foreseen. *Bowman v. Williams, supra; Chiuchiolo v. Wholesale Tailors, supra.* It has been declared that mental and nervous disorders are no more difficult to evaluate under these circumstances than as an element of damages following a physical injury. *Orlo v. Connecticut Co.* (Conn. 1941), 21 A. 2d 402, 405. Likewise it has been asserted that the question of causation lends itself to medical proof and is no more difficult of determination in this class of cases than in instances where there is contemporaneous personal injury. *Dulieu v. White & Sons* (Eng. 1901), 2 K.B. 669.

Recovery is usually denied where the fear or anxiety resulting in neurosis is for the life, safety or well being of a person other than plaintiff himself. *Waube v. Warrington* (Wis. 1935), 258 N.W. 497; 98 A.L.R. 394; *R. R. v. Stewart* (Ind. 1900), 56 N.E. 917. Our Court has adopted this view. *Hinnant v. Power Co.*, 189 N.C. 120, 126 S.E. 307; *May v. Telegraph Co.*, 157 N.C. 416, 423, 72 S.E. 1059; *Ferebee v. R. R., supra.* But there are contrary holdings. *Bowman v. Williams, supra.*

If it appears that plaintiff suffered physical consequences from emotional stress only because of his own special susceptibility, courts generally deny recovery on the ground that defendant is under a duty only to avoid conduct which can injure ordinarily susceptible persons. *Spade v. R. R., supra.* Some courts permit the matter to turn upon the question as to whether or not defendant had knowledge of plaintiff's abnormal susceptibility. *Oehler v. Bamberger & Co.* (N.J. 1926), 135 A. 71 (Affd. 103 N. J. L. 703, 137 A. 425). It has been held that where the abnormal susceptibility arose because of prior experiences, the injurious results cannot be regarded as having been proximately caused by defendant's conduct. *Legac v. Vielmeyer Bros.* (N.J. 1929), 147 A. 110. Some courts have refused to apply the sus-

ceptibility doctrine and have allowed recovery notwithstanding abnormalcy. *Purcell v. R. R.* (*Minn.* 1892), 50 N.W. 1034, 1035; *Kenney v. Wong Len* (N.H. 1925), 128 A. 343, 347.

The foregoing resume demonstrates the lack of harmony in the decisions of the courts in this area of the law. It appears that cases have usually been decided strictly upon the factual situations presented. Indeed, it is a field of the law in which there is great difficulty in adhering to any fixed set of principles. It is clear that our Court has decided cases in this category strictly upon the facts as presented without adopting inflexible rules.

There has been only one case in this Court in which a conversion reaction, as such, has been directly involved. *Mintz v. R. R.,* 233 N.C. 607, 609, 65 S.E. 2d 120. The decision in that case did not deal with the nervous disorder and it furnishes no guidance here.

The case of *Kimberly v. Howland, supra,* is the nearest approach in our reports to the case at bar. In this case defendant was blasting with dynamite on the outskirts of the city of Asheville, 175 yards from plaintiff's home. A large rock fell through the roof. Defendant's foreman was not an expert blaster and the charge was improperly fired off. Plaintiff was pregnant. She was in bed when the rock came through the roof. The rock did not strike her but she was frightened and upset, almost had a miscarriage and was ill for some time. The Court held that her shocked nervous system was a physical injury and recovery therefor was allowed. The Court said: "It is true defendant did not know at the time he fired the blast that the feme plaintiff was lying in bed in her home in a pregnant condition, but he or his agents knew it was a dwelling house and that in well-regulated families such conditions occasionally exist. While defendant could not foresee the exact consequence of his act, he ought in the exercise of ordinary care to have known that he was subjecting plaintiff and his family to danger, and to have taken proper precautions to guard against it." The charge of the trial court was approved and the following is an excerpt therefrom: ". . . if this fright and nervousness is the natural and direct result of the negligent act of the defendant, and if this fright and nervousness naturally and directly causes an impairment of health or loss of bodily power, then this would constitute an injury . . . and this injury must be the natural and direct result of the negligent act of the defendant and one which should have been foreseen by the defendant in the exercise of ordinary care." There are several differences between this case and the one at bar — at this point it is noted that the act in the manner it was performed

by the defendant was of a dangerous, violent and frightening nature.

The case at bar is factually unique even in its own category — cases of fright, anxiety and other emotional stress, unaccompanied by actual physical injury. Here defendant does not challenge recovery by plaintiff for property damage. In other words, defendant tacitly admits, for the purposes of this appeal, that plaintiff sustained damage to her automobile, defendant was negligent, and defendant's negligence was the proximate cause of such damage. But defendant insists there was no causal connection between defendant's negligent conduct and the fright, neurosis and conversion reaction experienced by plaintiff. We agree that defendant's negligence was not that cause which "in natural and continuous sequence, unbroken by any new and independent cause," produced the personal injury plaintiff complains of.

Plaintiff did not testify and does not now contend that she was frightened by the collision between her automobile and defendant's sportscar. Neither does she assert that her anxiety was occasioned by the grinding sound along the left side of her car. She said that all she could think of was that she had killed a child — a child on a bicycle. She had a more than ordinary predisposition to neurosis. The experience of her brother-in-law, about a month before, in colliding with a child on a bicycle, resulting in the child's death, had deeply affected her in her state of proneness to emotional disturbance. When the collision occurred she envisioned the possibility that she had collided with a non-existent child on an imaginary bicycle. In short, she was not frightened by what actually happened but by what might have happened. It was not the collision that caused her anxiety, it was something that did not exist at all, a phantom child on a non-existent bicycle.

The defendant was under no duty to anticipate or to take precautions against a mere possibility that plaintiff or other persons might imagine a state of facts that did not exist. The thing that plaintiff feared might have happened on this occasion is entirely remote from what actually did happen. And it was the imaginary thing, not the real occurrence, that caused the fright, neurosis and conversion reaction. Defendant is responsible only for the proximate result of her conduct, that is, for the damage caused by what actually did happen.

Furthermore, plaintiff did not see the vehicle that collided with the car. According to the evidence, defendant's right front fender made contact about the middle of the left front door of plaintiff's car. Plaintiff was sitting just inside that door. One slight glance

would have disclosed that she had collided with an automobile. The injury to the cars was slight; neither was going fast. It is true that if plaintiff had looked she could not have avoided the collision. But, if she had looked she would have seen that the object which struck her car was not a child on a bicycle. If she had merely looked she would not have been frightened by the occurrence and would have had no occasion for anxiety concerning that which did not happen — a possible collision with a phantom child on a bicycle. Plaintiff had the duty to keep a reasonable lookout. The conclusion is inescapable that her failure to look is a contributing cause of her fright, a cause without which the anxiety would not have arisen. Also, it is indisputable that plaintiff's fright and anxiety was for the safety of the imaginary non-existent child and not because of any apprehension for her own safety or well-being. The record does not disclose any evidence that plaintiff feared that she would suffer any harm of any kind from the collision. She thought of herself as one who might have injured another. And this was only momentary. She learned immediately that her fears were ungrounded. As already indicated, this Court has held that there can be no recovery for fright and anxiety, and resultant neurosis, which arises for the safety and well-being of another. In *Hinnant v. Power Co., supra,* at page 129, it is said, in a quotation from 8 R. C. L., 515, sec. 73: "In the law, mental anguish is restricted as a rule, to such mental pain or suffering as arises from an injury or wrong to the person himself, as distinguished from that form of mental suffering which is the accompaniment of sympathy or sorrow for another's suffering, or which arises from a contemplation of wrongs committed on the person of another."

In Restatement of the Law (1948 Supplement), Torts, section 435(2), it is said: "The actor's conduct is not a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."

As to plaintiff's action for damages for personal injury, the judgment below is reversed; as to the action for property damage, it is affirmed. This cause is remanded that the judgment may be modified in accordance with this opinion.

Modified and affirmed.

HIGGINS, J., took no part in the consideration or decision of this case.