REGINALD CLETUS CRAVEN, JR. v. TIMOTHY ALLEN CHAMBERS

No. 8121SC527

(Filed 2 March 1982)

1. **Damages § 3.4; Evidence § 48— psychiatrist—testimony concerning physical and psychological injuries received in automobile accident—exclusion improper**

    In a personal injury action, the trial court erred in excluding testimony by plaintiff's psychiatrist of the physical, mental and emotional injuries suffered by plaintiff as a result of an automobile accident. In addition to the physical impact of the cars and a physical injury to plaintiff's eye, some of plaintiff's other injuries satisfied the requirement of physical injury and the testimony that plaintiff suffered from anxiety neurosis, extreme nervousness, fear, apprehension, excessive perspiration, dizziness, insomnia, irritability, and loss of appetite, as well as the psychiatrist's medical opinions, should have been admitted.

2. **Damages § 3.4— testimony of medical bills from psychiatrist—exclusion improper**

    The trial court erred in not admitting into evidence plaintiff's medical bills from a psychiatrist since the medical attention given to plaintiff was reasonably necessary for the proper treatment of plaintiff's injuries.

3. **Evidence § 44— testimony concerning physical and mental health before and after accident—exclusion improper**

    It was error for the trial court to exclude testimony by plaintiff and his father concerning plaintiff's physical and mental health before and after an automobile accident.

4. **Damages § 11.2.— punitive damages—improper in hit and run accident**

    In an action concerning an automobile accident, evidence that a collision occurred on a two-lane paved road in a straight section between two curves; that neither vehicle was travelling at a speed exceeding 40 m.p.h.; that the

defendant's car crossed the center line and "side-swiped" the rear of plaintiff's truck did not allow a reasonable inference of willful or wanton negligence on defendant's part, requiring the submission of an issue of punitive damages to the jury. Consequently, defendant's failure to remain at the scene following the collision was not, in and of itself, sufficient to warrant the submission of a punitive damages issue to the jury.

**5. Costs § 4.1— expert witness fees—necessity of subpoena**

It was error for the trial court to tax an expert witness fee as part of the costs when the expert had not testified pursuant to a subpoena.

APPEAL by plaintiff and defendant from *Lupton, Judge.* Judgment entered 16 December 1980 in Superior Court, FORSYTH County. Heard in the Court of Appeals 14 January 1982.

Plaintiff alleges that as a result of an automobile collision with defendant's car, he suffered physical and emotional injuries, including a corneal abrasion in one eye, severe headaches, nervousness, insomnia, and anxiety neurosis. Following a jury verdict of $400 for plaintiff, the trial court ordered defendant to pay, as part of the cost, plaintiff's attorney's fees and the expert witness fees. The defendant appealed and plaintiff cross-appealed.

*Kennedy, Kennedy, Kennedy & Kennedy, by Harvey L. Kennedy and Harold L. Kennedy, III for plaintiff appellant and plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice, by Keith W. Vaughn and Keith A. Clinard for defendant appellant and defendant appellee.*

BECTON, Judge.

Defendant contends that the trial court erred in awarding attorney's fees and expert witness fees to plaintiff. On his cross-appeal, plaintiff contends that the trial court erred (1) in excluding testimony and medical bills from plaintiff's psychiatrist; (2) in not submitting an issue of punitive damages to the jury; and (3) in excluding testimony about plaintiff's physical and mental condition before and after the accident. Because defendant's issues can be summarily addressed, we discuss plaintiff's issues first.

I

[1] Relying on *Williamson v. Bennett,* 251 N.C. 498, 112 S.E. 2d 48 (1960), the trial court excluded the testimony of Dr. Selwyn

Rose, plaintiff's psychiatrist, concerning the physical and psychological injuries received by plaintiff in the automobile accident. The plaintiff contends the trial court erred in doing so, citing the more recent case of *Wesley v. Greyhound Lines, Inc.,* 47 N.C. App. 680, 268 S.E. 2d 855 (1980), *disc. review denied* 301 N.C. 239, 283 S.E. 2d 136 (1980). We agree with plaintiff.

Historically, when there was no actual physical impact or physical injury, courts "displayed considerable reluctance to extend recovery for mental distress and nervous disorders resulting from shock and fright to situations involving ordinary negligence." 251 N.C. at 504, 112 S.E. 2d at 52. In explaining this reluctance, Professor Prosser says: "The temporary emotion of fright, so far from serious that it does no physical harm, is so evanescent a thing, so easily counterfeited, and usually so trivial, that the courts have been quite unwilling to protect the plaintiff against mere negligence. . . ." W. Prosser, The Law of Torts, § 54 at 329 (4th ed. 1971). Mental distress and nervous disorder cases have turned on their facts, however. When there is some indicia of trustworthiness, some guarantee that the claim is not spurious, courts have allowed recovery for mental and emotional disturbance. In *Williamson* our Supreme Court said: "It is almost the universal opinion that recovery may be had for mental or emotional disturbance in ordinary negligence cases where, coincident in time and place with the occurrence producing the mental stress, some actual physical impact or genuine physical injury also resulted directly from defendant's negligence." 251 N.C. at 503, 112 S.E. 2d at 52.

Although reversing the judgment awarding Williamson damages, the *Williamson* Court said: "[t]he case at bar is factually unique even in its own category—cases of fright, anxiety, and other emotional stress, unaccompanied by actual physical injury." 251 N.C. at 507, 112 S.E. 2d at 54. On the basis of the following facts, the *Williamson* Court was impelled to its conclusion that plaintiff failed to show that defendant's negligence was the cause which, " 'in natural and continuous sequence, unbroken by any new and independent cause,' " *id.,* produced the plaintiff's injury:

> Plaintiff did not testify and does not now contend that she was frightened by the collision between her automobile and the defendant's sportscar. Neither does she assert that

her anxiety was occasioned by the grinding sound along the left side of her car. . . . When the collision occurred she envisioned the possibility that she had collided with a non-existent child on an imaginary bicycle. In short, she was not frightened by what actually happened but by what might have happened. It was not the collision that caused her anxiety, it was something that did not exist at all, a phantom child on a non-existent bicycle.

*Id.*

Twenty years after *Williamson* this Court considered the application of *Williamson* to *Wesley v. Greyhound*, a case similar to the case *sub judice*. In *Wesley*, this Court stated:

Although the Court denied recovery in *Williamson*, it did so because the plaintiff's injury was thought not to have been the proximate result of the defendant's acts, not because of a disavowal of the universal rule. That that was the case is evidenced by reiteration of the rule in *King v. Higgins*, 272 N.C. 267, 158 S.E. 2d 67 (1967). It is significant that under the rule, a plaintiff may recover if there is "some actual physical impact or genuine physical injury." This alternative mode of proof justifying recovery is important because of the difficulty of defining "physical injury." *See Kimberly v. Howland*, 143 N.C. 398, 55 S.E. 778 (1906). Under whichever test used, we have no difficulty in finding that plaintiff has suffered a compensable injury.

47 N.C. App. at 690, 268 S.E. 2d at 862.

*Wesley* involved the claim of a Greyhound Bus Lines passenger who was sexually assaulted as she waited in the lounge of the ladies' rest room for her ride. In *Wesley*, this Court said:

Plaintiff presented evidence that since the sexual assault, she has had difficulty sleeping, has had nightmares, and has awakened at night afraid that some other person was in the room threatening to harm her. . . . When viewed properly, plaintiff's evidence indicates that she has suffered mental trauma or emotional disturbance.

*Id.*

In the case *sub judice* the evidence indicates that there was physical impact and physical and mental injury suffered by plaintiff as a result of the negligent acts of the defendant. On *voir dire*, Dr. Rose testified that plaintiff suffered from anxiety neurosis, extreme nervousness, fear, apprehension, excessive perspiration, dizziness, insomnia, irritability, and loss of appetite.

Dr. Rose further testified:

> It was my diagnosis that Mr. Craven had an anxiety neurosis, that is, he had a state of anxiety, nervousness or tension, which was disabling and which prevented him from functioning. . . . He also had obsessive feelings about death . . . . He had some memory deficit. He had a poor short-term recall. It didn't affect long-term memory, but when the level of anxiety goes up, ideas and thoughts that go into the person's head don't get lodged well or they are lost or they are not heard. He complained of nervous headaches. He had physical symptoms. He complained initially of heart pounding and feeling physically nervous, wired and agitated.

In response to an "opinion question" Dr. Rose stated: "It is my belief that the accident triggered the underlying anxiety neurosis that had been present but was under control at that time."[1] Additionally, in response to a subsequent hypothetical question, Dr. Rose testified that it was his opinion that the accident on 22 July 1979 in which the plaintiff was involved *caused* the plaintiff's anxiety neurosis.

In addition to the physical impact of the cars and the physical injury to plaintiff's eye, we believe some of plaintiff's other injuries satisfy the requirement of physical injury. Dr. Rose himself testified: "Anxiety Neurosis is in a sense a physical problem because anxiety, nervousness is mediated through the nerves and through systems of the body, endocrine system." And, according to Prosser, the temporary emotion of fright is "to be distinguished [from] shock to the nervous system, which commonly is regarded as injury to the body rather than to the mind, and

---

1. Although the plaintiff had initially experienced anxiety neurosis after finding a dead man in the bathroom at Unique Furniture in March of 1979, he had gotten that condition under control, and had continued working. The automobile collision on July 22, 1979, caused the resurgence of the anxiety neurosis.

hence satisfies the requirement of physical injury." W. Prosser, Law of Torts, § 54 at 329, n. 43 (4th ed. 1971).

As this Court recently stated in *Wesley:*

When under the test of physical injury, plaintiff has shown such a wrecking of her nervous system as to come within the rule so eloquently stated and explained in *Kimberly v. Howland,* 143 N.C. 398, 403-04, 55 S.E. 778, 780 (1906):

"The nerves are as much a part of the physical system as the limbs, and in some persons are very delicately adjusted, and when 'out of tune' cause excrutiating agony. We think the general principles of the law of torts support a right of action for physical injuries resulting from negligence, whether wilful or otherwise, none the less strongly because the physical injury consists of a wrecked nervous system instead of lacerated limbs."

47 N.C. App. at 691, 268 S.E. 2d at 862-63. Professor Byrd's description of what constitutes a physical injury in North Carolina aptly summarizes our position:

Impairment of health, loss of bodily power, or sickness, without proof of any specific injury, has been held to constitute a physical injury. Similarly, proof that plaintiff became "almost helpless; that she could not go about her daily duties, and could not keep on her feet to attend to her children; that it has affected her ever since, and has caused her female trouble out of its regular course" has been held a sufficient showing of physical injury. A jury instruction permitting recovery if plaintiff was "put in fear and frightened to such an extent that she suffered physical pain, suffered in body and mind, and was made sick" was held proper. In many of these cases, expert medical testimony was not introduced to establish that the emotional distress could or did operate to cause physical consequences, and proof of the physical injury was through plaintiff's own testimony, much of which seems to have been couched in general language such as "sickness."

Byrd, Recovery for Mental Anguish, 58 N.C. L. Rev. 435, 458 (1980).

Dr. Rose testified that the automobile collision was very traumatic and frightening for the plaintiff; that prior to the accident, the plaintiff was able to function and after the accident he was unable to do so; and that plaintiff was unable to continue his job at Unique Furniture after the accident, although he had worked there for a year and a half before the accident. It was error for the trial court to exclude the testimony of Dr. Rose at the conclusion of the *voir dire* hearing, thus preventing the jury from hearing testimony of the physical, mental and emotional injuries suffered by plaintiff as a result of the automobile accident of 22 July 1979.

II

Having concluded that the trial court's decision barring Dr. Rose from testifying in the presence of the jury was contrary to the applicable law, it is not necessary to discuss in detail plaintiff's separate assignment of error relating specifically to the exclusion of Dr. Rose's medical opinions.

Having properly qualified Dr. Rose as an expert in the field of psychiatry, it was error for the trial court to sustain defendant's objections to plaintiff's cause and effect questions which sought Dr. Rose's medical opinions.

[2] We also elect to address summarily plaintiff's fifth, and closely related, assignment of error concerning the exclusion of his medical bills from evidence. We hold that the trial court erred in not admitting into evidence plaintiff's medical bills from Dr. Rose, since the medical attention given plaintiff was reasonably necessary for the proper treatment of plaintiff's injuries. *See Ward v. Wentz*, 20 N.C. App. 229, 201 S.E. 2d 194 (1973).

III

[3] Plaintiff also argues that the trial court erred in excluding his testimony and the testimony of his father concerning plaintiff's physical and mental health before and after the accident. We agree with plaintiff. The state of a person's health, a person's ability to work or engage in activities, a person's physical appearance and sleeping habits, among other things, are proper subjects of opinion testimony by non-experts. Both the plaintiff and his father were able to describe the state of plaintiff's health after the accident and to compare it with that

existing before the accident. The exclusion of their testimony was error. *See Ford v. Blythe Brothers Co.*, 242 N.C. 347, 357, 87 S.E. 2d 879, 885 (1955); *Wesley v. Greyhound Lines, Inc.; Kenney v. Kenney*, 15 N.C. App. 665, 669, 190 S.E. 2d 650, 653 (1972); 1 Stansbury, N.C. Evidence 2d, § 129 (Brandis Rev. 1973).

## IV

[4] Plaintiff next assigns as error the trial court's failure to submit the issue of punitive damages to the jury. Plaintiff contends that defendant's failure to stop and render assistance after being involved in an accident, in conjunction with other circumstances, warranted the submission of the issue of punitive damages to the jury. We disagree.

Although our courts have long held that punitive damages are recoverable in an automobile collision on allegations and proof that the injury complained of resulted from wanton negligence, *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E. 2d 393, 396-97 (1956) we have found no North Carolina case concerning the award of punitive damages in a hit and run situation. Indeed, only a few jurisdictions have considered this matter. Annot. 156 A.L.R. 1115 (1945).

In *Pelican Trucking Co. v. Rossetti*, 251 Miss. 37, 167 So. 2d 924 (1964), the Mississippi Supreme Court held that the trial court erred in submitting an issue of punitive damages when the only evidence relating to that issue was the failure of the defendant-driver to stop after defendant's truck had collided with plaintiff's car, and stated:

> There are very few cases on this question. The rule seems to be that failure to stop after the accident is not of itself evidence sufficient to support punitive damages, but along with all the accompanying facts and circumstances of the accident may be used to show that that portion of defendant's conduct which constituted the proximate cause of the accident was willful and wanton or grossly negligent [citations omitted]. . . .

> The question is: To what extent is failure to stop after an accident acceptable evidence to support exemplary damages? The inquiry must originate with the quality of the act causing the damages. Where there are other circumstances im-

mediately prior to and at the time of the collision which would tend to show gross negligence supporting exemplary damages in the act causing the damages, the actor's conduct occurring immediately after the happening of the accident may be relevant.

251 Miss. at 42-43, 167 So. 2d at 926.

In the case *sub judice* it is of no concern that the Complaint alleged wanton conduct or gross negligence. The issue before us is whether plaintiff's *proof* was sufficient to warrant submission of the punitive damages issue to the jury. We think not. Moreover, "we are not disposed to expand [the bases for the recovery of punitive damages] beyond the limits established by authoritative decisions of [our appellate courts]." 244 N.C. at 27, 92 S.E. 2d at 396.

We are clearly bound by this Court's holding in *Jarvis v. Saunders*, 34 N.C. App. 283, 237 S.E. 2d 865 (1977). In *Jarvis*, we set out the evidence in the opinion as follows:

> The collision which gave rise to the suit herein occurred on the afternoon of 15 November 1973. Plaintiff was riding his motorcycle on the back stretch of the larger track proceeding at a speed of 35 to 40 m.p.h. in a clockwise direction. Defendant, who had been riding in a clockwise direction stopped, turned around, and resumed travelling in the opposite direction accelerating to a speed of 35 to 40 m.p.h. When plaintiff observed the defendant headed toward him, he drove his motorcycle onto the grass shoulder on the right side of the trail, maintaining his speed. Though the trail was narrow there was sufficient room for the two motorcycles to clear each other. However, when they were within approximately 3 to 5 yards of each other, plaintiff saw defendant looking directly at him and "saw Greg's arm turn and he turned right toward me." The front wheel of defendant's motorcycle then collided with the front fender of plaintiff's motorcycle at a 45 degree angle causing serious injuries to plaintiff.

34 N.C. App. at 285, 237 S.E. 2d at 866. After discussing the requirements of willful, wanton or gross negligence, this Court stated:

While the evidence here is sufficient to support the jury's finding of negligence on the part of the minor defendant and contributory negligence on the part of the plaintiff, we are of the opinion that it is not sufficient to raise an inference of willful, wanton or intentional conduct, or gross negligence on the part of the minor defendant.

34 N.C. App. at 286, 237 S.E. 2d at 867. *See also Roberts v. Davis,* 15 N.C. App. 284, 189 S.E. 2d 767 (1972). Our Supreme Court seems to have tipped its hand, too. In *Heath v. Kirkman,* 240 N.C. 303, 82 S.E. 2d 104 (1954), in which the injured plaintiff sought punitive damages because the allegedly negligent defendant-driver refused to obtain medical treatment for the plaintiff following the accident, the Supreme Court commented on the plaintiff's punitive damage claim *in dicta:*

The appeal does not present the question as to the sufficiency of the allegations to warrant submission of an issue of punitive damages. Suffice it to say, decision of this question depends upon the circumstances giving rise to the alleged cause of action and not upon what occurred subsequent to the infliction of the personal injury.

*Id.* at 310, 82 S.E. 2d at 109.

In the case *sub judice,* there is evidence that the collision occurred on a two-lane paved road in a straight section between two curves; that neither vehicle was travelling at a speed exceeding 40 m.p.h.; and that defendant's car crossed the center line and "side-swiped" the rear of plaintiff's truck. Considering this and all the evidence, we are convinced that, although the evidence could support the jury's verdict that defendant was negligent, it does not allow a reasonable inference of willful or wanton negligence on defendant's part, requiring the submission of an issue of punitive damages to the jury. Consequently, defendant's failure to remain at the scene following the collision is not, in and of itself, sufficient to warrant the submission of a punitive damages issue to the jury.

In summary, although rejecting plaintiff's argument that the punitive damages issue should have been submitted to the jury, we hold that the trial court erred (1) in excluding testimony and medical bills from plaintiff's psychiatrist, and (2) in excluding

testimony about plaintiff's physical and mental condition before and after the accident.

DEFENDANT'S APPEAL

Defendant first argues that the trial court should not have awarded plaintiff attorney's fees under G.S. 6-21.1 since that statute was intended to encourage plaintiffs with small claims to bring their actions despite the high cost of counsel. According to defendant, plaintiff did not regard his claim as small; the initial claim was for $51,000.00, and the last offer of settlement was for $14,999.00.

To defendant's first argument, plaintiff makes three responses: (1) G.S. 6-21.1 makes specific reference to the amount recovered,[2] not the amount prayed for in the complaint; (2) the size of plaintiff's claim was reduced drastically when the trial court refused to admit testimony concerning plaintiff's psychological damages; and (3) the trial court did not abuse its discretion.

It is not necessary to address the specific arguments and counterarguments on this issue. Under G.S. 6-21.1, attorney's fees are "taxed as a part of the court costs." Because we are awarding plaintiff a new trial, no "judgment for damages" has been obtained, and, consequently, no attorney's fees shall be awarded as part of the cost.

[5] Defendant next argues that "the trial court erred in taxing an expert witness fee [of $200] for Dr. David Branch against the defendant in that Dr. Branch's testimony was not pursuant to a subpoena." Simply put, it is error for a trial court to tax an expert witness fee as part of the costs when the expert has not testified pursuant to a subpoena. *State v. Johnson*, 282 N.C. 1,

---

2. G.S. 6-21.1 states: In any personal injury or property' damage suit, or suit against an insurance company under a policy issued by the defendant insurance company and in which the insured or beneficiary is the plaintiff, upon a finding by the court that there was an unwarranted refusal by the defendant insurance company to pay the claim which constitutes the basis of such suit, instituted in a court of record, where the judgment for recovery of damages is five thousand dollars ($5,000) or less, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the litigant obtaining a judgment for damages in said suit, said attorney's fee to be taxed as a part of the court costs.

26-28, 191 S.E. 2d 641, 659 (1972); *Groves and Sons v. State*, 50 N.C. App. 1, 69, 273 S.E. 2d 465, 501 (1980), *disc. rev. denied* 302 N.C. 396, 279 S.E. 2d 353 (1981). A more elaborate statement is contained in *Siedlecki v. Powell*, 36 N.C. App. 690, 698, 245 S.E. 2d 417, 422 (1978), in which this Court stated:

> In their final argument, defendants assign error to the trial court's order setting an expert witness fee for plaintiff's witness, Dr. Keller, to be taxed as part of the costs in the action. This assignment of error has merit.
>
> G.S. 7A-314(a) and (d) allow the court to set an expert witness fee. As interpreted by our Supreme Court in *State v. Johnson*, 282 N.C. 1, 191 S.E. 2d 641 (1972), the statute requires that a witness must be under subpoena before he or she is entitled to compensation. Under this interpretation, the trial court had no authority to order the fee on behalf of Dr. Keller, who admittedly did not testify in obedience to a subpoena. Plaintiff's argument that the provisions of G.S. 7A-314(a), allowing fees for a witness "under subpoena, bound over, or recognized" should be read in the alternative, is persuasive; however, we are bound by the decision of the Supreme Court. We hold, therefore, that the order allowing the expert witness fee must be reversed.

In summary, neither the attorney fees nor the expert witness fee should have been awarded as part of the cost in this action.

On defendant's appeal, we

Vacate the award of attorney's fees and expert witness fees.

On plaintiff's cross appeal, we

Reverse and remand for a new trial.

Judge HEDRICK and Judge MARTIN (Harry C.) concur.