ROSA WYATT v. HENRY HARRISON GILMORE, III AND LINDA JEAN BECKER GILMORE

No. 8114SC706

(Filed 4 May 1982)

**Damages § 3.4— damages for physical injury from mental distress**
        Recovery will be permitted for physical injury resulting from the negligent infliction of emotional distress in the absence of contemporaneous physical impact even though the plaintiff suffered physical consequences from the emotional distress only because of his or her own special susceptibility. Therefore, the trial court erred in entering summary judgment for defendants in plaintiff's action to recover damages for a heart attack suffered by plaintiff as a result of fright induced when an automobile driven by one defendant struck a tree in plaintiff's front yard.

APPEAL by plaintiff from *Braswell, Judge.* Judgment entered 9 March 1981 in Superior Court, DURHAM County. Heard in the Court of Appeals 9 March 1982.

Plaintiff appeals from a summary judgment in favor of defendants, the sole issue being whether recovery should be permitted for physical injury resulting from mental distress in the absence of contemporaneous physical impact.

Plaintiff allegedly suffered a heart attack as the result of fright induced when the automobile defendant Henry Gilmore was driving struck a tree in plaintiff's front yard. Defendant Linda Gilmore was a co-owner of the automobile, but was not in the car when the accident occurred.

*Charles Darsie for plaintiff appellant.*

*Robert F. Baker for defendant appellees.*

MARTIN (Harry C.), Judge.

The sole issue raised on this appeal is whether summary judgment was appropriate. This in turn involves the question of defendants' liability for the mental distress and consequent physical injuries plaintiff suffered as a result of defendants' negligence. Defendants focus their argument upon a single element of actionable negligence—foreseeability, and we are thus drawn into this most basic, yet amorphous and complex, area of tort law in order to resolve the issue presented.

Our analysis will be two-fold. By way of foundation, it will be necessary to review the position our courts have taken in deciding cases which have turned on this issue. The second stage in our analysis will lead us to a consideration of the special rules which have evolved from emotional distress cases, particularly those involving emotional distress resulting in physical injury. Our review of emotional distress cases and commentary thereupon leads us to agree that the law in this area "is in an almost unparalleled state of confusion and any attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity." 64 A.L.R. 2d 103 (1959). We hasten to add, however, that our courts have "decided cases in this category strictly upon the facts as presented without adopting inflexible rules." *Williamson v. Bennett,* 251 N.C. 498, 506, 112 S.E. 2d 48, 54 (1960).

Under our general rules of negligence, a tort-feasor is liable if, by the exercise of reasonable care, he might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected. *Slaughter v. Slaughter,* 264 N.C. 732, 142 S.E. 2d 683 (1965). "A tort-feasor is liable to the injured party for all of the consequences which are the natural and direct result of his conduct although he was not able to have anticipated the peculiar consequence that did ensue." *Lockwood v. McCaskill,* 262 N.C. 663, 670, 138 S.E. 2d 541, 547 (1964). "It does not matter that [the particular consequences] are unusual, unexpected, unforeseen, and unforeseeable." *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 351, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting).

A tort-feasor's liability, however, is further governed by the element of causation. "The damages must be so connected with

the negligence that the latter may be said to be the proximate cause of the former." *Id.* In his dissenting opinion in *Palsgraf,* Judge Andrews speaks of proximate cause in the following terms: "[B]ecause of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." *Id.* at 352, 162 N.E. at 103.

Foreseeability is only one element of proximate cause, which includes other equally important considerations: whether the cause is, in the usual judgment of mankind, likely to produce the result; whether the relationship between cause and effect is too attenuated; whether there is a direct connection without intervening causes; whether the cause was a substantial factor in bringing about the result; and whether there was a natural and continuous sequence between the cause and the result. *See id.*

The causation element in any negligence action raises questions of fact and is thus most appropriately reserved for jury determination. Summary judgment can only be granted in those cases where reasonable men cannot differ on the issues of negligence and proximate cause. It is usually for the jury to say what was the proximate cause of the aggrieved party's injuries. *Robinson v. McMahan,* 11 N.C. App. 275, 181 S.E. 2d 147, *cert. denied,* 279 N.C. 395 (1971).

Defendants in the case sub judice have offered, however, a convincing argument in support of their position that, as a matter of law, they are not liable for plaintiff's injuries. We are cited to special rules applicable to cases involving the negligent infliction of emotional distress. Whereas "[t]here is almost universal agreement upon liability beyond the risk, for quite unforeseeable consequences, when they follow an impact upon the person of the plaintiff," in the absence of contemporaneous injury, recovery has been less certain. W. Prosser, Handbook of the Law of Torts § 50 at 300 (3d ed. 1964).

We are not here concerned with an effort to recover for mere fright caused by ordinary negligence. *McDowell v. Davis,* 33 N.C. App. 529, 235 S.E. 2d 896, *cert. denied,* 293 N.C. 360 (1977); nor are we concerned with the issue of whether plaintiff's subsequent injuries might properly be viewed as "physical," *Craven v. Chambers,* 56 N.C. App. 151, 287 S.E. 2d 905 (1982). We also distinguish that line of cases in which the tort-feasor's conduct

risks direct physical injury to the plaintiff but causes only emotional distress and consequential physical injury. In these cases liability is imposed although neither the distress nor the resulting injury is foreseeable. *See* Restatement (Second) of Torts § 436 (1965); *Lockwood, supra; Kimberly v. Howland,* 143 N.C. 398, 55 S.E. 778 (1906).

Our Supreme Court has held that "[w]here actual physical injury immediately, naturally and proximately results from fright caused by defendant's negligence, recovery is allowed." *Williamson, supra,* at 504, 112 S.E. 2d at 52. However, some courts have qualified this general rule by holding that if the plaintiff suffered physical consequences from emotional stress only because of her own special susceptibility, recovery is generally denied on the ground that defendant is under a duty only to avoid conduct which can injure ordinarily susceptible persons. The special susceptibility rule is in accord with the restatement position. *See* Restatement (Second) of Torts § 313(1)(b) (1965). The effect of the special susceptibility rule is to limit liability by modifying the "thin skull" or "eggshell skull" rule. What is more important, it appears to place the issue of foreseeability within the scope of duty, reminiscent of the Cardozo position in *Palsgraf. See Leannais v. Cincinnati, Inc.,* 480 F. Supp. 286 (E.D. Wis. 1979); *Colla v. Mandella,* 1 Wis. (2d) 594, 85 N.W. 2d 345 (1957). We choose to reject this approach.

Our holding appears to be consistent with other North Carolina cases involving the negligent infliction of emotional distress resulting in physical injury. For example, in *Kimberly, supra,* the defendant was negligent in blasting rock with dynamite in close proximity to plaintiff's house. A rock from one of the blasts crashed through a portion of the house. Plaintiff was pregnant and, as a result of the shock and fear, nearly suffered a miscarriage. In allowing recovery, the Court wrote:

> It is true defendant did not know at the time he fired the blast that the *feme* plaintiff was lying in bed in her home in a pregnant condition, but he or his agents knew it was a dwellinghouse and that in well-regulated families such conditions occasionally exist. While the defendant could not foresee the exact consequences of his act, he ought in the exercise of ordinary care to have known that he was subjecting plaintiff

and his family to danger, and to have taken proper precautions to guard against it.

143 N.C. at 402, 55 S.E. at 780. Defendant appealed from a jury verdict in favor of the plaintiff and the Court found that defendant should have reasonably foreseen the result of his negligence. There are features of this case which are readily distinguishable from the case sub judice (blasting is an ultrahazardous activity risking direct physical injury), yet implicit in the holding is that the particular facts of both cases raise questions of causation for jury determination.

In *Williamson, supra,* recovery was denied, not because of plaintiff's special physical susceptibility to emotion, but because of her peculiar susceptibility to the fright itself. Plaintiff's fright and anxiety were occasioned by an unreasonable belief that, upon collision with defendant's car, she had struck a child on a bicycle. We find *Williamson* distinguishable on its facts. Plaintiff, in the case sub judice, had what appeared to be a normal reaction to the loud crashing noise she heard when defendants' vehicle struck the tree in her yard. She was understandably startled and frightened. She had no peculiar susceptibility to fright. It has been observed that "[e]xcept for *Williamson,* no North Carolina case has involved the situation in which a defendant is unaware of plaintiff's susceptibility, and a projection of the position the Supreme Court might take in this situation is difficult." Byrd, *Recovery for Mental Anguish in North Carolina,* 58 N.C.L. Rev. 435, 465 (1980). It is significant, however, that the Court in *Williamson* cited as authority the Wisconsin case of *Colla, supra,* to which we turn for guidance.

The defendant in *Colla* left his truck parked, unattended, on a hill. The car rolled down an alley and crashed into the side of plaintiff's house, causing a loud noise. Plaintiff, a sixty-three-year-old man suffering from high blood pressure and a mild heart condition, was resting in his bedroom at the time of the collision and died of heart failure ten days later. There was no evidence that the noise or shock would have caused harm to one in good health. Medical testimony indicated that the accident did precipitate the heart failure. Defendant's motion for summary judgment was denied. On appeal, the Wisconsin court affirmed, stating that:

It is recognized by this and other courts that even where the chain of causation is complete and direct, recovery against the negligent tort-feasor may sometimes be denied on grounds of public policy because the injury is too remote from the negligence or too "wholly out of proportion to the culpability of the negligent tort-feasor", or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden upon users of the highway, or be too likely to open the way to fraudulent claims, or would "enter a field that has no sensible or just stopping point."

1 Wis. (2d) at 598-99, 85 N.W. 2d at 348.

"The determination to deny liability is essentially one of public policy rather than of duty or causation." *Id.* at 599, 85 N.W. 2d at 348. We are in agreement with the reasoning of the *Colla* court in finding no grounds of public policy on which recovery in this case should be denied, assuming the jury determines, from the various questions relating to proximate cause, that defendants should be held liable for their negligence. In accord is *Dulieu v. White & Sons*, 2 K.B. 669 (1901), holding that where medical evidence indicated that physical injury followed shock as a direct and natural effect, there was no legal reason for saying that damage was less proximate in a legal sense than damage arising contemporaneously. *See also Barrera v. E. I. Du Pont De Nemours & Co., Inc.*, 653 F. 2d 915 (5th Cir. 1981). With respect to the special susceptibility rule, we note that in *Colla* the court stated that "[i]t may be observed that heart disease is not a rare ailment." 1 Wis. (2d) at 600, 85 N.W. 2d at 349.

We adopt this more commonsense approach because we see no reason to distinguish one kind of physical injury from another based on special susceptibility. It seems no more "foreseeable" that a victim of fright should tear a cartilage, *Langford v. Shu*, 258 N.C. 135, 128 S.E. 2d 210 (1962), than suffer amnesia, *Lockwood, supra;* suffer danger of a miscarriage, *Kimberly, supra;* or have a heart attack, *Colla, supra.*

Defendant Henry Gilmore did not exercise due care in the operation of a motor vehicle. In fact, by pleading guilty to reckless driving, a violation of N.C.G.S. 20-140(a), defendant ad-

mitted he was operating his car in a criminally negligent manner. He acted unreasonably and in doing so exposed those travelling on the road, as well as those situated adjacent to it, to unnecessary danger. It was foreseeable that some harm would result. In order to recover, however, plaintiff is required to show that her injuries were proximately caused by defendants' wrongful act. Foreseeability is one, but not the sole, consideration in finding proximate cause. The summary judgment was improvidently entered.

Reversed.

Judges MARTIN (Robert M.) and WHICHARD concur.