GRADY B. BEAVER AND WIFE, RUBY MARLOWE BEAVER v. RICHARD P. HANCOCK, M.D.

No. 8422SC308

(Filed 15 January 1985)

**Physicians, Surgeons and Allied Professions § 14— malpractice—failure of plaintiff to offer any medical expert testimony—summary judgment proper**

 The trial court in a medical malpractice case properly granted summary judgment for defendant where plaintiff alleged that defendant was negligent in using wire sutures to close plaintiff's incision, leaving a loose piece of wire suture in plaintiff's body, and failing to discover, diagnose, or remove loose sutures from plaintiff's body; to establish any of these elements of negligence, plaintiff would have to rely in part on the testimony of other physicians who either diagnosed or treated plaintiff subsequent to the operation performed by defendant; to establish the standard of care owed to plaintiff and that defendant violated that standard, plaintiff would have to offer expert testimony; and plaintiff did not furnish the affidavits of any medical witnesses and indicated that he did not intend to rely on their testimony at trial.

APPEAL by plaintiffs from *Collier, Judge*. Judgment entered 19 October 1983 in IREDELL County Superior Court. Heard in the Court of Appeals 27 November 1984.

This is an action for medical malpractice brought by plaintiff Grady Beaver, and for loss of consortium by plaintiff Ruby Beaver (since Ruby Beaver's claim is entirely dependent, for convenience all further references to "plaintiff" herein are to Grady Beaver). Plaintiff experienced gall bladder problems beginning in 1977. Defendant operated on him in February 1978, removing his gall bladder. Defendant used wire sutures to close the peritoneal membrane, *i.e.*, the interior wall of plaintiff's abdomen.

Following the operation, plaintiff reported severe pain and soreness in the area around the incision, returning to the hospital in May 1978. Defendant talked to plaintiff during this stay; x-rays were taken, which faintly showed a loose piece of wire suture below the site of plaintiff's incision. Apparently, defendant did not

see these x-rays. Plaintiff was discharged without further treatment and he continued to experience severe pain. Plaintiff returned to defendant in late June 1978, and was x-rayed again. The x-rays again disclosed the free-floating wire. Defendant operated the next day and removed the loose wire; during the operation, he felt the original incision from inside and did not feel any broken sutures.

Plaintiff still continued to experience severe pain around the site of the original incision, but defendant advised him that the original sutures would not be harmful. Plaintiff consulted other doctors, who conducted tests and concluded that the wire sutures were the cause of plaintiff's pain. A third operation, in February 1979, resulted in the removal of 23 fragments of wire from plaintiff's abdomen. The pain ceased thereafter. Because of his debilitating pain, plaintiff's farm income declined, and he lost a separate position as sales and service agent for a farm equipment company. He also incurred substantial medical expenses.

Plaintiff's allegations of negligence, found in paragraph numbered XIII of the complaint were as follows:

XIII. That defendant was careless and negligent and failed to meet the reasonable and prudent standard of care that doctor of his training and learning would have exercised in the performance of his care of a patient in that he dropped a 5-centimeter wire in the peritoneum cavity of Grady Beaver and allowed the same to remain free-floating within the peritoneum cavity, and he failed and refused to remove the wire sutures from Grady Beaver which had become symptomatic immediately after the February 1978 operation and remained symptomatic until they were removed from Grady Beaver's body on February 27, 1979; that defendant should have counseled Grady Beaver with respect to removing said wire sutures during the June 1978 operation at the time defendant removed the one free-floating wire suture, and should not have dismissed Grady Beaver as a patient in August of 1978, while he knew, or reasonably should have known, that Grady Beaver was still in great pain and suffering due to the wire sutures breaking loose and becoming symptomatic; that due to his callous attitude and due to his negligent failure to continue treating and working with

Grady Beaver at such time that he knew, or reasonably should have known, that the broken wire sutures around the gall bladder incision site of February of 1978 had broken loose and had become symptomatic, he forced Grady Beaver to go to other physicians and undergo an operation by another physician in February of 1979, incurring medical bills in excess of $3,800.00, and causing him to experience an additional operation at that time for removal of the wire sutures and causing him great pain and suffering until that operation in February of 1979; that defendant should have counselled with Grady Beaver as to the type of sutures that he would close the gall bladder area with during the operation, and given him a choice of the type of sutures and should have warned him of the dangers of using steel sutures.

Plaintiff and his wife filed suit in November 1981, but later took a voluntary dismissal. Plaintiff reinstituted the action in August 1982. Defendant answered, and discovery ensued. Defendant submitted interrogatories, identical to interrogatories submitted in the first action, requesting the names of plaintiff's expert witness(es). Plaintiff did not answer. Upon order of the court, plaintiff answered, in August 1983, that he did not have an expert witness at the time but was actively seeking one. In September 1983 defendant moved for summary judgment supported by the affidavit of Dr. James Fahl.

Defendant's affidavit described his medical education, training, experience, and credentials, and further described defendant's treatment of plaintiff. Defendant stated, in summary, that as a surgeon practicing in Hickory, North Carolina, he removed plaintiff's gall bladder on 21 February 1978. During the course of the operation, defendant closed plaintiff's incision with interrupted wire sutures, a type of suture particularly appropriate for a man of plaintiff's physical characteristics. Defendant's post-operative course was uneventful and defendant was discharged from the hospital on 2 March 1978. Defendant saw plaintiff on 8 March and 19 April 1978. On 12 May 1978, defendant saw plaintiff in the hospital, where plaintiff had been admitted (by Dr. Kurad) for abdominal pain. Defendant examined plaintiff's incision and felt no broken wire sutures. Defendant next saw plaintiff at the hospital on 26 June 1978, when plaintiff advised defendant that plaintiff had a wire suture "somewhere down in his pelvis."

Defendant had an x-ray made, which disclosed a wire suture fragment "lying posterior in the pelvis." Defendant recommended that the suture be removed, which was accomplished in an operation on 27 June 1978. During this operation, defendant reached inside the abdominal cavity up under the peritoneum to the site of the incision, felt the underside of the incision and did not feel any broken sutures from that side. Defendant next saw plaintiff on 26 July 1978. The second incision was well-healed. Plaintiff had multiple complaints, principally of rectal pain. Defendant last saw plaintiff on 6 September 1978, when plaintiff complained of pain at the site of the second incision. Defendant discussed with plaintiff an operation to remove the wire sutures; defendant did not hear further from plaintiff. Defendant concluded his affidavit by stating his opinion that defendant's care and treatment of plaintiff was in accordance with the standards of practice among general surgeons with similar training and experience in Hickory and similar communities.

In his affidavit, Dr. Fahl a Hickory surgeon since 1972, stated that he had reviewed defendant's affidavit with respect to defendant's care and treatment of plaintiff; that he knew the standards of practice among general surgeons practicing in Hickory and similar communities, and that defendant's care and treatment of plaintiff was in accordance with those standards.

Plaintiff filed no opposing affidavit; but indicated that he planned to rely at trial on the history of his care and treatment by defendant to establish defendant's negligence. More particularly, based on demands made by defendant for plaintiff to disclose the names of expert witnesses to be used at trial, plaintiff indicated that he had no expert witnesses and did not plan to call any at trial.

*Harris & Pressly, by J. Pressly Mattox, for plaintiffs.*

*Kennedy, Covington, Lobdell & Hickman, by Charles V. Tompkins, Jr. and Kiran H. Mehta, for defendant.*

WELLS, Judge.

Plaintiff failed to place any exceptions or assignments of error in the record. The appeal nonetheless constitutes an exception to the judgment, and presents the question of whether the judg-

ment is supported by the conclusions of law. Rule 10(a) of the Rules of Appellate Procedure. A motion for summary judgment requires the court to rule on the legal sufficiency of the pleadings and evidence to raise issues of fact. *See Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). The court finds issues of fact; it does not determine them. *See Hotel Corp. v. Taylor*, 301 N.C. 200, 271 S.E. 2d 54 (1980); 73 Am. Jur. 2d *Summary Judgment* § 1 (1974). In addition, summary judgment is a drastic measure, to be used with caution, particularly in negligence cases. *Vassey v. Burch*, 301 N.C. 68, 269 S.E. 2d 137 (1980); *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1979). Accordingly, we hold that under Rule 10(a) plaintiff's appeal adequately presents the propriety of the grant of summary judgment.

On a motion for summary judgment, the evidence must be considered in the light most favorable to the non-moving party, with all favorable inferences therefrom. *Rose v. Guilford Co.*, 60 N.C. App. 170, 298 S.E. 2d 200 (1982). The moving party's papers are scrutinized carefully, while the non-movant's are treated indulgently. *Vassey v. Burch, supra.* Under these standards, the movant must forecast evidence which would entitle it to judgment as a matter of law. The opposing party has no duty to come forward until the movant has met its burden; if internal inconsistencies in the movant's evidence reveal a genuine issue of material fact, summary judgment should be denied. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). Once the movant has presented a sufficient showing, however, the non-movant cannot rest on conclusory allegations. *Lowe v. Bradford*, 305 N.C. 366, 289 S.E. 2d 363 (1982). Rather, it must come forward with specific facts showing a genuine issue for trial. *Id.*

Reluctant as we should be to allow the drastic remedy of summary judgment in negligence cases, *see Williams v. Power & Light Co., supra*, especially medical malpractice cases, *Vassey v. Burch, supra; Ballenger v. Crowell*, 38 N.C. App. 50, 247 S.E. 2d 287 (1978), we nevertheless conclude that under the unusual circumstances presented to the trial court in this case, summary judgment for defendant was appropriately granted. One of the recognized purposes of summary judgment is to allow the moving party, by discovery or affidavits, to "pierce the pleadings," to show that the opposing party cannot produce an essential element of his claim. *Lowe v. Bradford, supra.*

Beaver v. Hancock

Plaintiff's complaint asserts three principal aspects of defendant's negligence: (1) the use of wire sutures to close plaintiff's incision; (2) leaving a loose piece of wire suture in plaintiff's body; and (3) the failure to discover, diagnose, or remove loose sutures from plaintiff's body. It is clear that in order to establish any of these elements of negligence, plaintiff would have to rely in part on the testimony of other physicians who either diagnosed or treated plaintiff subsequent to his gall bladder operation.

Plaintiff's burden was to show that defendant was negligent in his care of plaintiff and that such negligence was the proximate cause of plaintiff's injuries and damage. *Ballenger v. Crowell, supra.* The defendant physician's negligence must be established by showing the standard of care owed to plaintiff and that defendant violated that standard of care. The standard owed is that standard which is in accordance with accepted standards of care in the community in which plaintiff was treated, or in similar communities. N.C. Gen. Stat. § 90-21.12 (1981), *Ballenger v. Crowell, supra.* Usually, but not in all cases, the accepted standard of care and its violation must be established by expert testimony. *Powell v. Shull*, 58 N.C. App. 68, 293 S.E. 2d 259, *cert. denied*, 306 N.C. 743, 295 S.E. 2d 479 (1982).

Based on the materials before the trial court at the summary judgment level, we cannot place this case in any exception to the general rule. Defendant having shown in his forecast of evidence that he did not violate the standard of care he owed plaintiff, it was then incumbent upon plaintiff to show by the affidavits of those other physicians who had treated plaintiff, or at least one of them, that defendant had violated the standard of care he owed plaintiff. In the process of discovery plaintiff furnished the names of fifteen medical people (radiologist, pathologist, physicians, and surgeons) who either diagnosed or treated plaintiff's problems following his gall bladder surgery, yet plaintiff not only did not furnish the affidavits of any of these persons, but clearly indicated he did not intend to rely on their testimony at trial. Given the nature of the medical problems set out in plaintiff's complaint, plaintiff's mere allegations as to his symptoms, pain, suffering, and treatment by others and conclusory allegations as to defendant's negligence was not sufficient to meet his burden on defendant's motion.

In approving the granting of summary judgment for defendant in this case, we deem it appropriate to emphasize the importance of paragraph (f) of Rule 56 of the Rules of Civil Procedure in this case and all similar cases. The Rule provides:

> (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Before allowing summary judgment for a defendant in a medical malpractice case, the trial court should be satisfied that the plaintiff has had ample opportunity to obtain affidavits required to rebut a defendant's affidavits on the issues of standard of care and violation of the standard, it being clear that defending health care providers have an advantageous position with respect to developing affidavits in support of their position. In this case, plaintiff's own representation to the trial court made it clear that plaintiff was not seeking the aid of the Rule 56(f) provisions.

For the reasons stated, the judgment below is

Affirmed.

Judges ARNOLD and BECTON concur.