JANET PATRICIA BAILEY AND CHARLES BAILEY v. J. KEMPTON JONES, VILLAGE FAMILY PRACTICE, KAJA HEATER AND CHAPEL HILL RADIOLOGY, P.A.

No. 9215SC893

(Filed 2 November 1993)

**Physicians, Surgeons, and Other Health Care Professionals § 149 (NCI4th) — malpractice — failure to use best judgment — no testimony — instruction not required — failure to use due diligence — testimony offered — instructions in language of statute insufficient**

In an action to recover for defendant's alleged medical malpractice, the trial court properly refused to instruct the jury as to defendant's duty to exercise his best judgment in the treatment of plaintiff, since there was no testimony, expert or lay, which tended to show that defendant breached such duty; however, plaintiff did offer expert testimony on the question of whether defendant exercised reasonable care and diligence in his treatment of plaintiff, and the court's instructions addressing this issue which used only the precise language of N.C.G.S. § 90-21.12 were insufficient and require a new trial.

**Am Jur 2d, Physicians, Surgeons, and Other Healers § 363 et seq.**

Judge LEWIS concurring in the result.

Appeal by plaintiff from judgment entered 16 April 1992 in Orange County Superior Court by Judge F. Gordon Battle. Heard in the Court of Appeals 1 September 1993.

*Law Offices of Grover C. McCain, Jr., by Grover C. McCain, Jr., Kenneth B. Oettinger, and William R. Hamilton, for plaintiff-appellant Janet Patricia Bailey.*

*Patterson, Dilthey, Clay & Bryson, by E. C. Bryson, Jr. and Mark E. Anderson, for defendant-appellees J. Kempton Jones and Village Family Practice, P.A.*

GREENE, Judge.

Janet Patricia Bailey (plaintiff) appeals from a jury verdict entered for defendants, Dr. J. Kempton Jones (Dr. Jones) and Village Family Practice, in plaintiff's medical malpractice action.

The evidence presented at trial tended to show the following facts. In May of 1988, plaintiff discovered a mass in her left breast during a routine breast self-examination. On 13 May 1988, plaintiff went to Village Family Practice, a partnership, for a physical examination and was examined by Dr. Jones, one of the partners. During the examination, plaintiff told Dr. Jones of the mass she had discovered and Dr. Jones attempted to locate the mass, but could not feel it. Dr. Jones told plaintiff that she must be feeling part of her breastbone. Dr. Jones, however, referred plaintiff to Chapel Hill Radiology, P.A., for a mammogram. A member of Dr. Jones' office called Chapel Hill Radiology on 13 May 1988 and scheduled an appointment for plaintiff on either 6 June or 16 June. Dr. Kaja Heater (Dr. Heater), a radiologist with Chapel Hill Radiology, testified that if a woman had a palpable mass, Chapel Hill Radiology would perform a mammogram on the same day the woman was examined by the referring physician. Dr. Jones gave plaintiff a "referral slip" which plaintiff was to take with her when she went to Chapel Hill Radiology for her mammogram.

Plaintiff contends that Dr. Jones did not properly fill out the "referral slip," failing to note that plaintiff had felt a mass in her breast. Dr. Jones testified that it is his custom to fill out the slip in its entirety.

Plaintiff was examined by Dr. Jones on 13 May 1988, and had the mammogram performed on 16 June 1988. The appointment book of Chapel Hill Radiology recorded that a 6 June appointment

BAILEY v. JONES

[112 N.C. App. 380 (1993)]

for the mammogram was cancelled. Plaintiff testified that the mammogram was originally scheduled for 16 June and that she did not cancel a 6 June appointment.

On 16 June 1988, plaintiff went to Chapel Hill Radiology for her mammogram. Plaintiff presented the "referral slip" to an employee of Chapel Hill Radiology and awaited her mammogram. At some point, it appears the "referral slip" was rewritten by an employee of Chapel Hill Radiology. It is unclear what became of the "referral slip" filled out by Dr. Jones.

Neither the technician who performed the mammogram, nor Dr. Heater, who interpreted the mammogram, saw the "referral slip" written by Dr. Jones, and neither was aware that plaintiff had felt a mass in her breast. After the mammogram, plaintiff talked with Dr. Heater about the results. Dr. Heater told plaintiff that although there was no previous mammogram for comparison, everything looked "fine."

The report sent from Chapel Hill Radiology to Dr. Jones noted that the mammogram revealed a mild tissue asymmetry in the left breast. Dr. Heater's report stated that "[i]f a palpable lesion is present, decision to biopsy should be based on clinical criteria." Dr. Heater further recommended a follow-up mammogram in six months.

Upon his receipt of Dr. Heater's report, Dr. Jones called plaintiff and told her that everything looked fine, but that he would like her to come back in six months for another mammogram. At trial Dr. Jones admitted that he did not fully understand Dr. Heater's report and that he believed that the language "[i]f a palpable lesion is present" meant that if **he** felt a lesion, a biopsy should be performed. Although Dr. Jones asked plaintiff to return in six months, no follow-up appointment was scheduled, nor did Dr. Jones' office send plaintiff a reminder.

Plaintiff next returned to see Dr. Jones on 16 August 1989. On this occasion, Dr. Jones noticed a mass in plaintiff's breast. Dr. Jones again referred plaintiff to Chapel Hill Radiology, where a mammogram revealed a lesion in the left breast. Dr. Jones then referred plaintiff to a surgeon who performed a biopsy of the left breast and diagnosed plaintiff as having cancer. Plaintiff underwent a radial mastectomy, as well as radiation and chemotherapy treatments. At the time of trial, plaintiff was clinically disease-free of cancer.

**BAILEY v. JONES**

[112 N.C. App. 380 (1993)]

Plaintiff and her husband, Charles R. Bailey, filed suit on 25 May 1990 in Orange County Superior Court, alleging that Dr. Jones, Village Family Practice, Chapel Hill Radiology, and Dr. Kaja Heater failed to timely diagnose her cancer, resulting in a delay in treatment. Plaintiff sought money damages for her reduced life expectancy and plaintiff's husband sought money damages for loss of consortium.

Plaintiff introduced the testimony of Dr. Lynn Carmichael (Dr. Carmichael), a family practitioner familiar with the standards of practice of family practitioners in Orange County at the time Dr. Jones treated plaintiff. Dr. Carmichael testified that the mammogram performed on plaintiff was a "screening mammogram" rather than a "diagnostic mammogram." The difference, according to Dr. Carmichael, is that a screening mammogram is primarily a preventive measure performed on a woman where there are no symptoms or findings of a lump or mass. A diagnostic mammogram, on the other hand, is performed when a lump or mass has been felt or when there is another reason, such as a patient's family medical history, which suggests that the patient may be at risk for breast cancer. Dr. Carmichael testified that in cases such as this, where a patient has told the doctor that she has felt a mass in her breast, "the doctor would probably want to order—to do a mammogram. That would be a diagnostic mammogram." Dr. Carmichael further testified: "Usually, if you're referring for a screening mammogram, there is not a great deal of urgency, and so it may take a few weeks to set it up, or a time that's convenient for the patient to go. For the diagnostic mammogram, though, you want results, and you would like to have them quickly."

Dr. Carmichael also testified that Dr. Jones should have called the radiologist after receiving the mammography report to clear up ambiguities contained in the report. Dr. Carmichael testified as follows:

[A]s I read the report, and what I considered an abnormality was noted, the density deep in the left breast. And while it—there was a notation that there were none of the microcalcifications that are characteristic of malignancy, there was still an abnormality that I didn't understand.

My lack of understanding there was compounded by the recommendation. The recommendation was to repeat the mammogram in six months.

In doing the mammogram, your main concern — it's not the total concern, but the main concern is malignancy. Malignancies differ from other kinds of illnesses like respiratory infections or diabetes or arthritis in that you may in the course of the illness before the person maybe has many symptoms reach sort of a point of no return.

And I just feel that, while you might with a person who has diabetes, whose blood sugar was a little above normal say, "Well, let's just see what happens here, see if you develop any symptoms, and come in for a yearly physical, and if something happens in the meantime let me know."

You can do that with diabetes. You can't do that with malignancies, because you never know when these things are going to metastasize. So I felt that six months was outside the limit for a prudent recommendation for repeating the mammogram.

So when I'm faced with, again — please understand me. I'm not saying that — I'm saying that my interpretation was ambiguous. I don't think the radiologist meant to be ambiguous. I think, therefore, what I should have done as the physician would have been to call the radiologist and to discuss it with her and clarify her situation on it.

During the trial, plaintiff and her husband reached a settlement with Chapel Hill Radiology and Dr. Heater. At the close of plaintiff's evidence a directed verdict was entered for the remaining defendants on plaintiff's husband's loss of consortium claim.

The trial court instructed the jury in pertinent part as follows:

The defendant, Dr. Jones, would be negligent if he failed to provide care in accordance with the standard of health care required by law.

. . . . [T]he law requires a family practice physician to possess the degree of professional learning, skill, and ability that is ordinarily possessed by others in the same health care profession with similar training and experience who were situated in the same or similar communities at the time the health care services were rendered.

In order for you to find that Dr. Jones failed to act in conformity with the standard of health care required by law,

plaintiff must satisfy you by the greater weight of the evidence what the standards of practice were among family practice physicians with similar training and experience, and who were situated in the same or similar communities at the time Dr. Jones examined the plaintiff in 1988, and that the defendant, Dr. Jones, did not act in accordance with those standards of practice in regards to what he did and did not do after receiving the mammogram report from the radiologist on June 16, 1988.

. . . .

So finally, members of the jury, as to this issue on which the plaintiff has the burden of proof, if you are satisfied by the greater weight of the evidence that the defendant, Dr. Jones, was negligent in that he failed to comply with the standard of health care required by law, and that such negligence was a proximate cause of injury to Mrs. Bailey, then it would be your duty to answer this issue "yes" in favor of the plaintiff.

The trial court refused, over plaintiff's objection, to instruct that Dr. Jones had breached his duty to (1) exercise his best medical judgment; and (2) use reasonable care and diligence in the treatment of plaintiff.

The jury returned a verdict for Dr. Jones and Village Family Practice and judgment was entered upon the verdict on 16 April 1992.

The issue presented is whether the trial court erred in refusing to instruct the jury as to Dr. Jones' duty to exercise best judgment and to use reasonable care and diligence in the treatment of plaintiff.

Under the common law of North Carolina, a physician must (1) possess the degree of professional learning, skill, and ability which others similarly situated ordinarily possess; (2) exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) use his best judgment in the treatment and care of the patient. *Hunt v. Bradshaw*, 242 N.C. 517, 521-22, 88 S.E.2d 762, 765 (1955). N.C. Gen. Stat. § 90-21.12, enacted in 1975, provides:

In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment

of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

N.C.G.S. § 90-21.12 (1990). This statute did not create a new standard of care for medical malpractice nor is it "an exclusive statement of malpractice liability law." Robert G. Byrd, *The North Carolina Medical Malpractice Statute*, 62 N.C. L. Rev. 711, 741 (1984) [hereinafter *Byrd*]. The statute merely codifies the " 'same or similar communities' standard of care previously adopted by this Court," *Wall v. Stout*, 310 N.C. 184, 191, 311 S.E.2d 571, 576 (1984); *see Makas v. Hillhaven, Inc.*, 589 F. Supp. 736, 740 (M.D.N.C. 1984) (the statute "refines the definition of same or similar communities"), and is meaningful only in terms of the common law duties. *Byrd* at 741. The enactment of N.C. Gen. Stat. § 90-21.12, therefore, did not abrogate the common law duties set forth in *Hunt*, *Wall*, 310 N.C. at 192, 311 S.E.2d at 576, but provided a basis by which compliance with these duties could be determined. Thus, the physician is required to (1) possess the degree of professional learning, skill, and ability possessed by others with similar training and experience situated in the same or similar communities at the time of the alleged negligent act; (2) exercise reasonable care and diligence, in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged negligent act, in the application of his knowledge and skill to the patient's case; and (3) use his best judgment in the treatment and care of his patient. Failure to comply with any one of these duties is negligence. *Hunt*, 242 N.C. at 521-22, 88 S.E.2d at 765.

Plaintiff makes no contention that defendant did not possess the necessary degree of professional learning, skill, and ability. Plaintiff does contend that defendant was negligent in failing to exercise his best judgment and in failing to exercise reasonable care and diligence in his treatment of her and that the trial court therefore erred in not instructing the jury on these duties. Because plaintiff timely objected to the instructions given, she was entitled to an instruction on these duties, if there was evidence in the record to support a breach of the duties. *See Penley v. Penley*,

BAILEY v. JONES

[112 N.C. App. 380 (1993)]

314 N.C. 1, 26-27, 332 S.E.2d 51, 66 (1985) (defendant barred from assigning error to jury instruction which was unsupported by the evidence where defendant failed to object); *see also Shields, Inc. v. Metric Constructors, Inc.*, 106 N.C. App. 365, 370, 416 S.E.2d 597, 600 (1992) (trial court must instruct on substantive features of the case).

Generally, expert testimony is necessary

to establish a prima facie case for malpractice against a physician or a hospital. Expert testimony is [also] typically required to establish the degree of care and skill required, any departure from that standard, and the causal relationship between the departure from the standard and the harm incurred by the plaintiff.

3 Charles Kramer, *Medical Malpractice* ¶ 29.01[1] (1990). North Carolina is in accord. *See Beaver v. Hancock*, 72 N.C. App. 306, 311, 324 S.E.2d 294, 298 (1985). Expert testimony is not required however, to establish the standard of care, failure to comply with the standard of care, or proximate cause, in situations where a jury, based on its common knowledge and experience, is able to decide those issues. *Powell v. Schull*, 58 N.C. App. 68, 71-72, 293 S.E.2d 259, 261, *disc. rev. denied*, 306 N.C. 743, 295 S.E.2d 479 (1982). The application of this "common knowledge" exception to the requirement of expert testimony in medical malpractice cases has been reserved for those situations in which a physician's conduct is so grossly negligent or the treatment is of such a nature that the common knowledge of laypersons is sufficient to find the standard of care required, a departure therefrom, or proximate causation. *See Buckner v. Wheeldon*, 225 N.C. 62, 64, 33 S.E.2d 480, 482 (1945) (plaintiff had compound fracture of leg with bone protruding through open wound, doctor failed to cleanse or sterilize open wound before setting leg in cast, causing infection); *Groce v. Myers*, 224 N.C. 165, 170, 29 S.E.2d 553, 557 (1944) (doctor, in the course of treating plaintiff's insanity, jerked plaintiff's arm, breaking it); *Mitchell v. Saunders*, 219 N.C. 178, 184, 13 S.E.2d 242, 246 (1941) (doctor left sponge in patient's body during surgery).

In this case there was no testimony, expert or lay, which tended to show that Dr. Jones breached the duty to exercise his best judgment. Accordingly, the trial court properly refused to instruct on this duty.

BAILEY v. JONES

[112 N.C. App. 380 (1993)]

As to whether Dr. Jones exercised reasonable care and diligence in his diagnosis and treatment of the plaintiff for breast cancer, expert testimony was required. This is a matter involving "highly specialized knowledge with respect to which a layman can have no reliable information." *See Jackson v. Mountain Sanitarium*, 234 N.C. 222, 227, 67 S.E.2d 57, 61 (1951). Plaintiff did offer expert testimony that Dr. Jones should have ordered that plaintiff undergo a diagnostic mammogram within a day of the 13 May examination and that Dr. Jones should have called the radiologist, after receiving the report, to clarify the ambiguities in the radiologist's report. This testimony goes to the question of whether Dr. Jones exercised reasonable care and diligence in his treatment of plaintiff and plaintiff was thus entitled to an instruction on this specific duty.

The instructions given in this case are insufficient. Our Supreme Court in specifically addressing this issue held that it was insufficient for the trial court to instruct the jury "that the sole issue relating to a physician's alleged negligence is whether he complied with [N.C.G.S. § 90-21.12]." *Wall*, 310 N.C. at 192, 311 S.E.2d at 576. In this instance the jury was instructed that Dr. Jones would be negligent if he "did not act in accordance with" "the standards of practice . . . among family practice physicians with similar training and experience, and who were situated in the same or similar communities at the time Dr. Jones examined the plaintiff in 1988." The use of only the precise language of N.C. Gen. Stat. § 90-21.12 was expressly prohibited by *Wall*, and therefore, the instruction was error requiring a new trial.

New trial.

Judge EAGLES concurs.

Judge LEWIS concurs in the result with separate opinion.

Judge LEWIS concurring in the result.

I agree with the majority that the trial court gave an incomplete instruction as to whether or not Dr. Jones complied with the appropriate standard of care. However, I disagree with the majority's analysis of whether or not expert testimony was required to show that Dr. Jones failed to exercise reasonable care and diligence in his treatment of plaintiff. The majority states that "expert testimony was required" and cites *Jackson v. Moun-*

*tain Sanitarium & Asheville Agr. Sch.*, 234 N.C. 222, 67 S.E.2d 57 (1951), because "[t]his is a matter involving 'highly specialized knowledge with respect to which a layman can have no reliable information.'" The majority seems to cite *Jackson* for the proposition that expert testimony is <u>always</u> required on the issue of reasonable care and diligence and to that extent, I believe that the majority misconstrues *Jackson*.

The full sentence from which the majority quotes provides "[u]sually, what is the standard of care required of a physician or surgeon is one concerning highly specialized knowledge with respect to which a layman can have no reliable information." *Id.* at 226-27, 67 S.E.2d at 61. This does not say that expert testimony is always required, only that it is usually required. In fact, in *Jackson* the Supreme Court went on to state that "[t]here are others, however, where non-expert jurors of ordinary intelligence may draw their own inferences from the facts and circumstances shown in evidence." *Id.* at 227, 67 S.E.2d at 61-62. Actually, in the discussion which precedes the language which the majority quotes, the Supreme Court specifically disavowed the notion that expert testimony would always be required:

> It is true it has been said that no verdict affirming malpractice can be rendered in any case without the support of medical opinion. If this doctrine is to be interpreted to mean that in no case can the failure of a physician or surgeon to exercise ordinary care in the treatment of his patient, or proximate cause, be established except by the testimony of expert witnesses, then it has been expressly rejected in this jurisdiction.

*Id.* at 226, 67 S.E.2d at 61. Thus it is clear that *Jackson* falls under the "common knowledge" exception to the requirement of expert testimony in medical malpractice cases. Although the majority accurately describes the "common knowledge" exception, I fear that future courts may seize upon the majority's citation to *Jackson* as standing for the proposition that expert testimony is always required on the issue of reasonable care and diligence and for this reason I write separately.