**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TRACY LANTZ JEFFRESS,
　　　　　　*Plaintiff-Appellant,*

v.

KESHAVPAL G. REDDY, M.D., in his
individual capacity and as a
principal in Triad Psychiatric and
Counseling Center, P.A.; TRIAD
PSYCHIATRIC AND COUNSELING
CENTER, a North Carolina
Corporation; DANIEL C.
LONGENECKER, R.N.,
　　　　　　*Defendants-Appellees,*

v.

MASOUD S. HEJAZI, in his individual
capacity and as a principal in Triad
Psychiatric and Counseling Center,
P.A.; RUPINDAR KAUR, M.D., in her
individual capacity and as an
employee of Triad Psychiatric and
Counseling Center, P.A.,
　　　　　　*Defendants.*

No. 98-2613

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Norman K. Moon, District Judge.
(CA-97-20-D)

Argued: March 1, 2000

Decided: October 7, 2003

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge Traxler wrote a concurring and dissenting opinion.

---

**COUNSEL**

**ARGUED:** Barbara Rubin Hudson, Danville, Virginia, for Appellant. Bevin Ray Alexander, Jr., FREEMAN, DUNN, SWEENEY & ALEXANDER, P.C., Lynchburg, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Plaintiff Tracy Lantz Jeffress brought an eleven count complaint against defendants, Dr. Reddy, M.D., Triad Psychiatric and Counseling Center, and Daniel Longenecker, R.N., in the United States District Court for the Western District of Virginia. She appeals the district court's grant of summary judgment to the defendants on her medical malpractice, fraud and intentional infliction of emotional distress claims. The district court denied the defendants' motion for summary judgment on the remaining claims and the parties tried the case to a jury which returned its verdict wholly for the defendants. Plaintiff also appeals the district court's ruling excluding one of her expert witnesses' testimony. Because no genuine issue of material fact existed and the defendants were entitled to summary judgment as a matter of law, we affirm the district court's grant of summary judgment to the defendants. We also decide that the district court did not abuse its discretion by excluding the plaintiff's expert witnesses' testimony; that she had a fair and impartial trial; and that the district court had subject matter jurisdiction.

I.

On April 9, 1997, plaintiff[1] filed this diversity action in the United States District Court for the Western District of Virginia. At all relevant times, plaintiff resided in Pittsylvania County, Virginia. Initially, plaintiff filed suit for compensatory and punitive damages for psychiatric/medical malpractice, fraud, intentional infliction of emotional distress, unauthorized disclosure and release of medical diagnosis and confidential information, defamation, and breach of contract against three physicians and Triad Psychiatric and Counseling Center, P.A. (Triad). On May 27, 1998, the district court entered an order granting summary judgment to two of the doctors, Dr. Hejazi and Dr. Kaur, denying summary judgment to Dr. Reddy and to Triad, and adding Daniel C. Longenecker, R.N. as a party defendant. On September 8, 1998, defendants Dr. Reddy, Triad, and Longenecker filed another motion for summary judgment.

Plaintiff's first contact with the defendants was in connection with her husband's treatment for bipolar disorder and her own previously diagnosed Post Traumatic Stress Disorder.[2] Triad is a professional association registered in the State of North Carolina that specializes in psychiatry and individual counseling. Dr. Reddy and Longenecker are affiliated with Triad and with Charter Hospitals. In 1994, plaintiff responded to a Charter Hospital advertisement to receive therapy for herself to learn to cope with her childhood history and with her husband's dysfunction. While being treated at Charter, the plaintiff also sought psychiatric treatment for her husband from Charter Hospital. In June 1995, Dr. Cooper at Charter Hospital referred John D. Jeffress, plaintiff's husband, to an out-of-state doctor for electroconvulsive shock therapy. Upon Mr. Jeffress's return from electroconvulsive shock therapy, Dr. Reddy conducted Mr. Jeffress's psychiatric treatment on a referral from Dr. Cooper.

In late August 1995, both Mr. Jeffress and the plaintiff were arrested for and indicted on fourteen counts of felony embezzlement

[1]At the time of oral argument, counsel for plaintiff was unclear as to the finality of the Jeffresses's divorce.

[2]In 1991, plaintiff was diagnosed as having Post Traumatic Stress Disorder as a result of childhood sexual abuse.

in Pittsylvania County, Virginia.[3] In September 1995, Dr. Reddy started seeing Mr. Jeffress in Dr. Reddy's private practice at Triad in Greensboro, North Carolina for insurance reasons. Plaintiff joined her husband's therapy as part of marital counseling or conjoint therapy, which led to her own individual counseling as well. Longenecker, a psychiatric nurse, conducted sessions between Mr. Jeffress and the plaintiff, and the plaintiff's individual sessions.

Plaintiff continued under Longenecker's care until mid-March 1996.[4] During her course of treatment, the plaintiff was hospitalized twice, once in February 1996, after her and her husband's conviction in state court for felony embezzlement, and again in March 1996. After her release from hospitalization in March, the plaintiff learned that her husband had filed a proceeding for custody of their two children. She alleged in her complaint in this case that Dr. Reddy and Longenecker supported Mr. Jeffress in his effort for custody.

According to the plaintiff's complaint, the defendants produced two letters without her knowledge or permission and disseminated the same to various people and public entities. The first letter, dated December 12, 1995, stated that plaintiff was medically incompetent to stand trial and/or assist her lawyers in the preparation of her [criminal embezzlement] case. Dr. Reddy signed this letter and addressed it to the plaintiff's criminal trial attorney. Apparently, plaintiff's criminal trial attorney, who also acted as Mr. Jeffress's attorney, had contacted Triad and explained that if the plaintiff was truly ill and could not stand trial, she needed a letter to confirm her condition. The plaintiff alleged that this letter was sent to "a Virginia attorney" without her knowledge or permission.

Dr. Reddy authored a second letter, dated February 29, 1996 and addressed "To Whom It May Concern," stating that the plaintiff was under treatment for major depression due to her mother's death and

---

[3]These charges stemmed from their work at Roland Concrete Co. in Danville, Virginia which Mr. Jeffress's uncle owned. Mr. Jeffress acted as the president and chief executive officer of Roland and the plaintiff, Mrs. Jeffress, was the bookkeeper until the spring of 1994.

[4]Plaintiff also alleged in her complaint that Longenecker allowed Mr. Jeffress to "intrude" into many of her individual sessions.

for Post Traumatic Stress Disorder. Dr. Reddy also indicated in the letter that the plaintiff could not accurately interpret reality which caused problems with the care of her children and her finances. The plaintiff alleged that Mr. Jeffress obtained this letter and sent it to many credit companies, the Juvenile and Domestic Relations District Court in Pittsylvania County, the Pittsylvania County Department of Social Services, the Social Security Administration in Danville, and several other entities. She also alleged that as a result of the December 12, 1996 and February 29, 1996 letters, she suffered the following: humiliation, embarrassment, stigma, depression, loss of enjoyment, fear of losing her children, mental suffering, and physical suffering in the form of headaches, nausea, and inability to eat. Plaintiff also alleged that because the defendants abused and breached her trust, she can no longer trust any mental health providers to help her to recover from these incidents.

On March 13, 1996, both Longenecker and Dr. Reddy signed a letter stating that Mr. Jeffress had progressed in his treatment and was competent to care for himself and his children. Plaintiff alleged that the dissemination of the March 13, 1996 letter caused her to sustain attorney's fees, physical assault by her husband, and various mental and physical manifestations of her suffering.

Plaintiff's complaint alleged eleven counts of liability, seven of which were styled medical/psychiatric malpractice, each with individual titles: conflict of interest, breach of duty to provide adequate medical care, erroneous and false diagnosis of her without examination, breach of the duty of confidentiality, dissemination of diagnosis without consent, dissemination of false diagnosis of mental incompetence, and breach of the duty of loyalty. The other four counts included defamation, fraud, intentional infliction of emotional harm, and breach of contract. On September 23, 1998, the district court granted the defendants' motion for summary judgment on the fraud claim and the intentional infliction of emotional distress claim because the court found as a matter of law that the plaintiff failed to allege sufficient facts to prove causation. On the morning of September 28, 1998, the district court further granted summary judgment to the defendants on the following medical/psychiatric malpractice claims: conflict of interest, breach of duty to provide adequate medical care, erroneous and false diagnosis, and breach of duty of loyalty. The court tried the

case on the remaining claims. After a four day trial, the jury returned a verdict in favor of the defendants on the breach of duty of confidentiality, dissemination of diagnosis without consent, dissemination of false diagnosis, and defamation claims. The plaintiff did not litigate or present to the jury the breach of contract claim. The plaintiff now appeals the district court's grant of summary judgment, the exclusion of her expert's testimony, and she asserts that she did not receive a fair and impartial trial.

## II.

We review the district court's grant of summary judgment *de novo*. See *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Summary judgment is proper if, viewing the facts in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1987); Fed. R. Civ. Pro. 56(c). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish an element essential to her case, especially when that party also bears the burden of proof at trial. See *Celotex*, 477 U.S. at 322.

The plaintiff claimed she sustained multiple mental and physical injuries as a result of the defendants' treatment of her. The district court classified the majority of these alleged injuries as subjective—those it labeled as mental, emotional and psychiatric. Her alleged objective injuries included nausea, an inability to eat normally, severe headaches, anxiety, insomnia, and exacerbation of her ulcer. Even considering the deposition testimony of the plaintiff's expert witnesses, the district court determined that her medical malpractice claims could not survive summary judgment due to insufficient proof as to the causation and damage elements. We agree.

## A.

The substantive elements of a medical malpractice suit are questions of state law in a diversity action. See *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982) (examining the substantive elements of medical malpractice and the required proof). After applying Virginia's choice of law principles, the district court applied North Carolina

law to this diversity action, because the plaintiff's treatment and the defendants' conduct occurred in North Carolina. Under North Carolina law, to prove medical malpractice, a plaintiff must show: 1) the applicable standard of care, 2) a breach of the standard of care by the defendant, 3) the injuries suffered by the plaintiff were proximately caused by such breach, and 4) the damages resulting to the plaintiff. See *Weatherford v. Glassman*, 500 S.E.2d 466, 468 (N.C. Ct. App. 1998) (citations omitted).

Assuming that the plaintiff presented sufficient evidence to establish the standard of care for psychiatrists in North Carolina, and that the defendants breached this standard of care, she did not present sufficient evidence to establish the last two elements of her medical malpractice claims. In "'malpractice cases, proof of causal connection must be something more than consistent with the plaintiff's theory of how the claimed injury was caused.'" *Fitzgerald*, 679 F.2d at 349 (quoting *Walstad v. University of Minnesota*, 442 F.2d 634, 639 (8th Cir. 1971)). Conjecture, speculation, and mere possibilities will not sustain the plaintiff's burden of proof on the proximate cause element. *Fitzgerald*, 679 F.2d at 349. Not only must the plaintiff present such evidence, but generally "expert testimony is necessary to establish a prima facie case for malpractice against a physician . . . [and] is typically required to establish . . . the causal relationship between the departure from the standard [of care] and the harm incurred by the plaintiff." *Bailey v. Jones*, 435 S.E.2d 787, 792 (N.C. Ct. App. 1993) (internal quotations omitted in original) (quoting 3 Charles Kramer, *Medical Malpractice* ¶ 29.01[1] (1990)). Thus, expert testimony is needed to prove that the defendant's breach of the standard of care was "more likely" or "more probably" the cause of the plaintiff's injury—a jury may not speculate as to the cause of the injury. *Fitzgerald*, 679 F.2d at 349-50.

Expert testimony is not required in two situations: when a physician's conduct is so grossly negligent or when the treatment is the type within a layman's common knowledge and a layman could determine the standard of care, the departure from that standard, or proximate causation. See *Bailey*, 435 S.E.2d at 787 (citations omitted). Most, even if not all, of the plaintiff's alleged injuries are not within a layman's common knowledge, rather they are determinable only in the light of scientific knowledge. See *Fitzgerald*, 679 F.2d at 350

(citation omitted). Therefore, the plaintiff must adduce expert testimony to support a conclusion of proximate causation. We now turn to the submitted expert testimony.

B.

Plaintiff wanted to call Dr. Edward Wolpert[5] and Dr. Nicolas Stratas as her expert witnesses. First we note that neither Dr. Wolpert nor Dr. Stratas examined or diagnosed the plaintiff. Both expert witnesses relied upon her past medical records and her own declaration of her conditions. Both Dr. Wolpert and Dr. Stratas expressed that if the defendants had properly managed Mr. Jeffress's bipolar disorder, the plaintiff would not have suffered as she did. However, neither expert took into account the additional "stressors" in the plaintiff's life at the time of her treatment—her embezzlement trial, her other financial difficulties, and her own pre-existing mental problems. Dr. Wolpert stated that the plaintiff's prosecution, and conviction, and her pre-existing or existing Post Traumatic Stress Disorder, "[were] problems" and that Mr. Jeffress's mania "led to the difficulties" the Jeffresses experienced. The district court found, and we agree, that this testimony was insufficient to establish the causal link between the defendants' treatment of the plaintiff and any alleged injuries. Similarly, Dr. Stratas had only "vague general notions" of the other problems. To characterize these opinions on causation as within a reasonable degree of medical certainty when neither expert considered all of the surrounding circumstances would be improper. A jury would be forced to speculate that the defendants' treatment, and not the multitude of other possible causes, more likely than not, caused the plaintiff's alleged injuries. We are of opinion that both experts' opinions fell below the required standard of proof and were not legally sufficient evidence.

Plaintiff argues that if multiple causes of an injury exist, she need only show that defendants' conduct was a substantial factor in producing the harm. See *Wyatt v. Gilmore*, 290 S.E.2d 790, 791 (N.C. Ct. App. 1982)[6]; see also *Shumaker v. United States*, 714 F. Supp.

---

[5]Dr. Wolpert's deposition was properly excluded, the district court considered a letter from him.

[6]The *Wyatt* court actually listed the following as considerations to the proximate causation question: forseeability, whether the cause is likely

154, 162 (M.D.N.C. 1988) (noting that the plaintiff's burden is strict). Plaintiff's proffered expert testimony did no more than raise a "mere possibility" that the defendants' alleged negligence caused her injury.[7] *Shumaker*, 714 F. Supp. at 162.

## C.

At most, the plaintiff's proffered expert testimony established the standard of care in North Carolina and that the defendants' records of her treatment may not have been thorough. She failed to prove a causal link that defendants' treatment of her more likely than not caused her alleged injuries. As to her alleged injuries, the record is devoid of any direct evidence. No physician examined the plaintiff after the alleged medical malpractice. The only evidence of the alleged injuries is the plaintiff's own declaration and two layman's accounts of her condition.

Plaintiff listed her injuries as "irreparable and permanent" emotional, psychiatric and mental pain, anguish, damage, distress, aggravation of pre-existing emotional injuries, temporary loss of her children, loss of faith, and loss of trust and confidence in mental health care providers. These injuries, along with the alleged physical injuries of anxiety attacks and exacerbation of her pre-existing ulcer, are subjective. See *Gillikin v. Burbage*, 139 S.E.2d 753, 760-61 (N.C. 1965) (distinguishing subjective and objective injuries). Plaintiff's mere allegations as to her symptoms, pain, suffering and treatment are conclusory and are insufficient to prove damages to a reasonable certainty. See *Beaver v. Hancock*, 324 S.E.2d 294, 299 (N.C. Ct. App. 1985). Likewise, the plaintiff's friend's and pastor's testimony do not suffice as expert testimony to prove these subjective injuries. We

---

to produce the result, whether the cause and effect are too attenuated, whether a direct connection exists between cause and effect without intervening causes, and whether a natural and continuous sequence between the cause and effect exists. See *Wyatt*, 290 S.E.2d at 791.

[7]The district court listed the other problems in the plaintiff's life: marital difficulties, her husband's bipolar disorder, credit card debt, her embezzlement conviction, her husband's unemployment, and her pre-existing depression.

therefore conclude that the district court was correct granting summary judgment to the defendants on the plaintiff's medical malpractice claims.

We also agree with the district court that because the plaintiff failed to allege sufficient facts to prove that defendants' treatment proximately caused any of her alleged injuries, summary judgment was appropriate on the fraud and intentional infliction of emotional distress counts.[8]

## III.

The plaintiff had named as an expert witness Dr. Edward Wolpert, a Chicago physician. The defendants took Dr. Wolpert's discovery deposition, which the district court excluded at trial when offered by the plaintiff. It is such exclusion which is the error claimed on appeal. In this case, in which the essential claim is that the district court misconstrued its own order, we defer to the construction of the district court, which is in the best position to interpret its previous orders. See *Vaughns v. Board of Education of Prince George's County*, 758 F.2d 983, 989 (4th Cir. 1985). In all events, we should not reverse an evidentiary ruling of a district court unless it was manifestly erroneous. See *Spring Co. v. Edgar*, 99 U.S. 645, 658 (1878).

The facts presented in the district court follow.

At the instance of the plaintiff's attorney seeking advance payment of an attorneys fee to her witness, the district court entered its order, the complete text of the relevant part of which follows:

> It is further ordered, defendants having agreed to pay the usual hourly expert witness fee not to exceed $500.00 per hour for 2 hours, that plaintiff arrange for defendant to depose plaintiff's expert at a mutually agreeable time and place.

---

[8]Before the trial began, plaintiff's counsel indicated that she did not dispute the district court's grant of summary judgement on the plaintiff's intentional infliction of emotional distress cause of action. Plaintiff arguably waived this claim at that time.

The deposition was taken in Chicago and the defendant's attorney advised the court that Dr. Wolpert told him upon arrival to take the deposition that he, Wolpert, had reviewed the order of the court and was only going to give the defendant two hours. The deposition proceeded, and, at the end of two hours, Dr. Wolpert stopped the deposition and would not proceed. The statement he made was: "and now it is time to stop."

The plaintiff's attorney acknowledges that she gave a copy of the court order to Dr. Wolpert. While she denies that his refusal to continue his testimony at the deposition was at her instance, she did not call Dr. Wolpert as a live witness at the trial, did not take Dr. Wolpert's deposition for use at the trial as she might have, and instead offered into evidence the discovery deposition taken by the defendant's attorney in Chicago. Even when the motion to exclude the deposition was argued she persisted.

> THE COURT: Right now, it is right here, and it just seems so grossly unfair that a witness can call off his deposition, say "I am not going to testify any more," and at the deposition he can decide you like what's there and so you get to use the deposition. I don't know that's ever been allowed.

> MS. HUDSON: Your Honor, the Court ordered two hours.

So the district court construed its own order as not limiting the deposition to two hours.

We agree with the decision of the district court. We are of opinion that it was quite within its discretion in excluding the deposition and its action was not erroneous at all, much less manifestly erroneous.

## IV.

Plaintiff contends, in approximately 35 additional items, that many events which occurred during the trial denied her a fair and impartial

trial.[9] Although the plaintiff did not make a motion for a mistrial at any time, we note that she did raise several objections regarding the way the court conducted the trial. After examining all of the plaintiff's allegations and the record in this appeal, we find no reversible error and conclude that the district court afforded the plaintiff a fair and impartial trial.

V.

Additionally, plaintiff argues that the district court was without subject matter jurisdiction to hear this case. The plaintiff asserts that the district court lost its subject matter jurisdiction when it tried the case as a "tort action" rather than as a "medical malpractice action." Of course, litigants may raise a lack of subject matter jurisdiction objection at any time during a case. See *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998).

Plaintiff brought this action pursuant to 28 U.S.C. § 1332 as a diversity action in the United States District Court for the Western District of Virginia. 28 U.S.C. § 1332 requires complete diversity of citizenship of the parties and an amount in controversy exceeding $75,000. See *Athena Automotive Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). The jurisdictional inquiry focuses on the time the action commenced. See *Athena*, 166 F.3d at 290 (citations omitted). At the time she commenced this action, the statutory requirements for diversity jurisdiction were met—the defendants were citizens of, and licensed and registered in, North Carolina and the plaintiff was a citizen of Virginia. Of the counts tried by the district court, the plaintiff alleged well over $75,000 in damages for each. Plaintiff's assertion

---

[9]The plaintiff's complaints about the way the district court conducted her trial include, but are not limited to: interrupting during witness testimony, excluding relevant evidence, interrupting during attempts to enter evidence on damages, implying a threat to impose sanctions against plaintiff's counsel, erroneously representing the record, cross examining witnesses, allowing defendants' counsel to make silent objections, moving people in the courtroom, refusing to give certain jury instructions, preventing impeachment of one of defendants' witnesses, giving the jury instructions before closing arguments, and failing to send the exhibits to the jury before deliberation.

that the district court somehow lost subject matter jurisdiction over this case is without merit. We are unaware of any authority to the contrary.

## VI.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants on the plaintiff's medical malpractice, fraud, and intentional infliction of emotional distress counts. We also find that the district court did not abuse its discretion by excluding Dr. Wolpert's testimony and that the district court afforded the plaintiff a fair and impartial trial.

Accordingly, the judgment of the district court is

*AFFIRMED.*[10]

TRAXLER, Circuit Judge, concurring and dissenting:

I concur in the result reached in part IV, and I also concur in the result reached in part V as to Jeffress's subject matter jurisdiction claims. However, I believe the district court improperly granted sum-

---

[10]The motion of Tracy Lantz Jeffress to dismiss intervenor Wayne Milam as a party to this appeal shall be, and it hereby is, granted.

It is further ordered that the clerk of our court will return to Mrs. Jeffress the papers, filed by Mrs. Jeffress with our court August 14, 2003 to accompany the motion to dismiss Milam as a party to this appeal, which papers are apparently a copy of part of the record in the case of *State of North Carolina v. Wayne Milam* in the Superior Court Division of Caswell County, North Carolina.

The defendants in this case, who are the appellees on appeal, have objected to certain comments and conclusions stated in the said motion filed August 14, 2003 and, while we need express no opinion on the merits of said objection, we have not considered the said comments and conclusions.

It is further ordered that the motion of appellees for additional costs as a sanction against Tracy Lantz Jeffress and her attorney shall be, and it hereby is, denied.

mary judgment against Jeffress's claim of medical malpractice and improperly excluded her expert witness's deposition testimony. Accordingly, I respectfully dissent from part II and part III of the majority opinion.

I.

A motion for summary judgment should only be granted when "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence could lead reasonable people to different conclusions. *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967). Furthermore, a court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Id.* at 249.

Under North Carolina law, summary judgment for a defendant doctor in a medical malpractice action may be appropriate where the plaintiff "fail[s] to produce sufficient evidence of the applicable standard of care, of a breach of that standard of care, and that the damages suffered . . . were proximately caused" by the defendant doctor. *Evans v. Appert*, 372 S.E.2d 94, 96 (N.C. Ct. App. 1988). "Expert testimony is . . . typically required to establish the degree of care and skill required, any departure from th[e] standard [of care], and the causal relationship between the departure from the standard and the harm incurred by the plaintiff." *Bailey v. Jones*, 435 S.E.2d 787, 792 (N.C. Ct. App. 1993) (quoting 3 Charles Kramer, *Medical Malpractice* ¶ 29.01[1] (1990)). In order to prove causation, "the plaintiff must introduce evidence affording 'a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result.'" *Shumaker v. United States*, 714 F. Supp. 154, 162 (M.D.N.C. 1998) (quoting *Waffen v. United States Dept. of Health & Human Servs.*, 799 F.2d 911, 918 (4th Cir. 1986)). The district court concluded that the plaintiff did not present sufficient evidence to establish causation and damages. I respectfully disagree.

Plaintiff submitted an affidavit and the deposition testimony of one of her medical experts, Dr. Stratas, to establish causation and dam-

ages. Dr. Stratas reviewed Jeffress's medical records in connection with this claim, including: defendants' process notes; Charter Hospital notes for plaintiff's treatment in psychiatric care in 1994 with Dr. Cooper; hospitalization records of Jeffress in 1995-6; and plaintiff's declarations. The Federal Rules of Evidence permit an expert to base his opinion on "[t]he facts or data . . . perceived by or made known to the expert at or before the hearing." Fed. R. Evid. 703. Dr. Stratas was not required to base his opinion on a firsthand examination of the plaintiff. There are three possible sources of information from which Dr. Stratas could derive his expert opinion: firsthand observation, presentation at trial, and presentation of data outside of court. *See* Fed. R. Evid. 703 advisory committee's note. The third source contemplates that an expert, especially a medical expert, is much like a physician who

> bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions by nurses, technicians and other doctors, hospital records, and X rays. . . . The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

*Id.*

Rather than offer conclusory statements, Dr. Stratas considered the facts of Jeffress's treatment and, based on his experience with similar patients, opined that "because of what happened at Triad . . . it is highly likely that . . . [Jeffress's] conditions developed." J.A. 590. While he was cognizant of the other stressors in Jeffress's life, he opined that "the treatment rendered to Mrs. Jeffress . . . violated [her] and she . . . suffers and will continue to suffer the consequences." J.A. 471. As to damages, Dr. Stratas further stated that sleeplessness and gastrointestinal problems, both injuries claimed by Jeffress, were typical "psychiatrically-related complaints." J.A. 590.

This testimony, while not as exact as one would prefer, was sufficient in my opinion to preclude summary judgment. I therefore dissent from the majority's conclusion that the district court properly

granted summary judgment against Jeffress's medical malpractice claims.

## II.

While I commend the district court on doing yeoman's work managing this "most exasperating case" and its numerous discovery disputes, I believe that the district court erred when it excluded the deposition testimony of one of the plaintiff's experts.

The district court had issued an order regarding the taking of Dr. Wolpert's testimony and allowed defense counsel to depose Jeffress's expert at the "usual hourly expert witness fee not to exceed $500.00 per hour for 2 hours." J.A. 227-28. Prior to and during this deposition, Jeffress's counsel warned defense counsel that Dr. Wolpert would stop his testimony after two hours. And when the two hours were up Dr. Wolpert concluded his deposition. Although defense counsel objected to this termination, there is no evidence counsel sought to guarantee pay to Dr. Wolpert commensurate with the continuation of the deposition, nor is there any indication that defense counsel sought intervention of the court. Instead, when trial time came, defense counsel objected to any use of Dr. Wolpert's testimony by Jeffress. The district judge sustained the objection and prohibited Jeffress from utilization of Dr. Wolpert's testimony stating "it just seems grossly unfair that a witness can call off his deposition, say[ing] 'I am not going to testify any more.'" J.A. 695-96.

Respectfully, I believe the total exclusion of the testimony from Jeffress's expert was unwarranted. First, the judge in his order set what reasonably would appear to be a time limit of two hours. There is nothing in the record upon which to base any conclusion other than the order meant what it said. Second, if there was a belief on the part of defense counsel that the deposition should be extended and there was a legitimate desire to do so, in my opinion it was incumbent upon defense counsel, not Jeffress's counsel, to secure from the court any necessary clarification and authorization to proceed beyond the two hours. Yet it was Jeffress who was punished.

By refusing to allow Jeffress to present Dr. Wolpert's testimony, the district court effectively sanctioned Jeffress. Based on what I have

said above, I can see nothing that Jeffress did wrong, much less anything so wrong that would warrant the complete exclusion of her expert's testimony. To me the issue cannot be resolved by deferring to the district judge's after-the-fact interpretation of his order. The order was, in my judgment, clear on its face and limited the length of the deposition to two hours. Consequently, I believe the real question is whether Jeffress was reasonable in her interpretation of what the judge had said in his instructions in setting up the deposition. In my view, she was indeed reasonable in her belief and the sanction of exclusion was not justified.